**Troy D. Greenfield,** OSB #892534
Email: tgreenfield@schwabe.com
**Joel A. Parker,** OSB #001633
Email: jparker@schwabe.com
**Jeffrey S. Eden,** OSB #851903
Email: jeden@schwabe.com
**Alex I. Poust,** OSB #925155
Email: apoust@schwabe.com
**Lawrence R. Ream** (Admitted *Pro Hac Vice*)
Email: lream@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900


**Ivan B. Knauer** (Admitted *Pro Hac Vice*)
Email: knaueri@pepperlaw.com
**Brian M. Nichilo** (Admitted *Pro Hac Vice*)
Email: nichilob@pepperlaw.com
Pepper Hamilton, LLP
600 14th Street, NW, Suite 500
Washington, DC  20005
Telephone: 202. 220.1219
Facsimile: 202. 220.1665


Attorneys for the Receiver for Defendants
AEQUITAS MANAGEMENT, LLC; AEQUITAS HOLDINGS,
LLC; AEQUITAS COMMERCIAL FINANCE, LLC; AEQUITAS
CAPITAL MANAGEMENT, INC.; AEQUITAS INVESTMENT
MANAGEMENT, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | No. 3:16-cv-00438-PK |
| Plaintiff, | RECEIVER'S MOTION FOR ORDERS: (1) SCHEDULING HEARING TO APPROVE SALE OF ASSETS; (2) APPROVING |

Page 1 -    RECEIVER'S MOTION RE ASSET SALE AND
BIDDING PROCEDURES
(CCM Capital Opportunities Fund, LP)

PDX\129912\215141\AP\19468891.12

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

v.

AEQUITAS MANAGEMENT, LLC;
AEQUITAS HOLDINGS, LLC;
AEQUITAS COMMERCIAL FINANCE,
LLC; AEQUITAS CAPITAL
MANAGEMENT, INC.; AEQUITAS
INVESTMENT MANAGEMENT, LLC;
ROBERT J. JESENIK, BRIAN A. OLIVER;
and N. SCOTT GILLIS,

Defendants.

CEDAR SPRINGS CAPITAL AS
STALKING HORSE BIDDER; (3)
APPROVING BREAK-UP FEE; (4)
APPROVING BIDDING PROCEDURES;
and (5) APPROVING THE SALE OF
ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS
(CCM Capital Opportunities Fund, LP)

## LR 7-1 CERTIFICATION

On December 7, 2016, the undersigned circulated to the approximately 58 counsel of

record, via email, a form of this Motion[1] and a proposed Bid Procedures Order that are

substantially the same as the filed versions.  The conferral requested that counsel respond by

12:00 noon (Pacific Time) on December 14, 2016, as to whether their clients object or consent to

the motion (the "Conferral Deadline").  Prior to the Conferral Deadline the undersigned had

received two responses from counsel, both of which consented to the relief sought in the Motion.

After the Conferral Deadline, the undersigned received a communication from counsel

for defendant Robert Jesenik.  That communication did not object to or consent to the Motion,

but instead requested that the Notice Period in the proposed Bidding Procedures be extended

from 14 days to 30-45 days.   The Receiver does not consent to Mr. Jesenik's request.  As Mr.

Jesenik's counsel was advised, the 14-day Notice Period was negotiated by the Receiver and the

Buyer as one of the many terms of a comprehensive purchase and sale transaction.  Additionally,

the Receiver cannot unilaterally modify the Notice Period and has been advised by the Buyer

that it does not consent to such a change.

In good faith compliance with LR 7-1, the parties conferred through email but were

---

[1] Capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Final Receivership Order, the Bidding Procedures, or the Purchase and Sale Agreement, as applicable.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

unable to resolve Mr. Jesenik's proposed modification to the Bidding Procedures.  The Receiver

urges that the Bidding Procedures be approved in the form submitted herewith.

<u>OVERVIEW AND MOTION</u>

Ronald F. Greenspan, the duly appointed Receiver ("<u>Receiver</u>") on behalf of each of

Aequitas Private Client Fund, LLC, Aequitas Holdings, LLC, Aequitas Commercial Finance,

LLC, Aequitas Capital Opportunities GP, LLC, and Aequitas Corporate Lending, LLC (together,

the "<u>Seller</u>"), has reached an agreement, subject to final documentation and approval of this

Court, with Cedar Springs Special Opportunities IV, LP, and CSC Spec Opps IV GP, LLC

(together, the "<u>Stalking Horse Bidder</u>" or "<u>Buyer</u>"), which provides the terms for sale ("<u>Sale</u>") of

Seller's general and limited partnership interests in CCM Capital Opportunities Fund, LP (the

CCM Interests, defined below), certain Notes and other property (together, the "<u>Property</u>," as

defined in the Amended and Restated Agreement of Purchase and Sale dated as of December 7,

2016 (the "<u>Purchase and Sale Agreement</u>")).  The Stalking Horse Bidder is prepared to close the

Sale on or before January 18, 2017, subject to this Court's approval of the sale terms, the bidding

procedures and break-up fee.

The Sale is an all cash offer in the amount of $52,000,000.00, which shall be paid at

closing as set forth in the Purchase and Sale Agreement, a copy of which is attached as <u>Exhibit 1</u>

to the accompanying Declaration of Ronald F. Greenspan ("<u>Greenspan Decl.</u>").  In addition to

the Purchase Price, the Buyer has committed to a potential capital outlay of up to $21,700,000.00

pursuant to the CCM Liquidity Offer and has committed to fund an additional $20,000,000.00

for the CCM Follow-on Financing (as those terms are defined in the Purchase and Sale

Agreement).[2]

---

[2] For the absence of doubt, amounts paid and advanced pursuant to the CCM Liquidity Offer and the CCM
Follow-on Financing will not be funds that are received by the Receivership Entity.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

The Receiver now moves (the "Motion") the Court for an order 1) approving the bidding procedures, stalking horse bidder, and break-up fee, and 2) setting a Final Hearing for approval of the Sale to the Stalking Horse Bidder or a sale to a Successful Bidder after the conclusion of the auction, if any (the "Bid Procedures Order").  At the Final Hearing the Receiver shall request entry of a final order approving the sale and all associated transactions and agreements (the "Final Sale Order"), after any bidding and auction process has been completed.

## I.      Bid Procedures Order and the Final Sale Order.

1.      The Receiver moves the court for immediate entry of the Bid Procedures Order, which includes the following relief:

(a)      Schedule a final hearing on January  10, 2017, or as soon thereafter as the Court can schedule the hearing to authorize and approve the sale of the Property and all other transactions contemplated by the Purchase and Sale Agreement (the "Final Hearing");

(b)      Approval of (i) the Bidding Procedures, (ii) Buyer as the "stalking horse bidder," and (iii) the Break-Up Fee (defined below) and payment thereof under the terms set forth in the Purchase and Sale Agreement and the Bid Procedures Order;

(c)      Set a deadline and establish requirements and procedures for competing offerors to submit qualifying alternative bids, as set forth in the Bidding Procedures; and

(d)      Set a deadline that is not less than two (2) business days prior to the date of the Final Hearing for filing objections to the Motion or entry of the Final Sale Order.

2.      At the Final Hearing for approval of the Sale, the Receiver will ask the Court for entry of the Final Sale Order, which will authorize:

(a)      the sale of the Property under the terms and conditions of an approved Purchase and Sale Agreement to the Stalking Horse Bidder, or another Successful Bidder, free and clear of all liens, claims, encumbrances and

Page 4 -      RECEIVER'S MOTION RE ASSET SALE AND
BIDDING PROCEDURES
(CCM Capital Opportunities Fund, LP)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\129912\215141\AP\19468891.12

interests ("Liens");

    (b)    authorize the Receiver to repay the CP Holdings Loan; and

    (c)    authorize any additional relief consistent with the foregoing and as necessary to allow the approved transaction to be consummated.

3.    At the Final Hearing the Receiver will also request that the Court find that:

    (a)    the proposed Sale to the Stalking Horse Bidder, or sale to another Successful Bidder, is in the best interests of the Seller, the Receivership Entity, and its estate and creditors;

    (b)    the proposed Sale is being proposed and, if approved, will be consummated pursuant to the terms of the approved Purchase and Sale Agreement; and

    (c)    the Stalking Horse Bidder or the Successful Bidder, if any, is not an insider or affiliate of the Receiver or the Receivership Entity.

4.    This Motion is based upon the records and files herein and the accompanying Declaration of Ronald F. Greenspan.

## II.    Procedural and Fact Background.

A.    Appointment of the Receiver and Description of the Property.

5.    On March 16, 2016, pursuant to the Stipulated Interim Order Appointing Receiver, Mr. Greenspan was appointed as Receiver for the five entity defendants and 43 related entities on an interim basis (the "Interim Receivership Order") [Dkt. 30].  On April 14, 2016, pursuant to the Order Appointing Receiver, Mr. Greenspan was appointed as Receiver of the five entity defendants and 43 related entities on a final basis (the "Final Receivership Order") [Dkt. 156].  The five entity defendants and the 43 related entities are known as the Receivership Entity.[3]  (Greenspan Decl., ¶ 2).

---

[3] Final Receivership Order, ¶ 1.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

6.      CCM Interests.  Pursuant to the Interim Receivership Order and the Final

Receivership Order the Receiver has, among other things, undertaken to determine the nature,

location and value of all Receivership Property.  Receivership Property includes 69.04% of the

limited and general partnership interests in CCM Capital Opportunities Fund, LP ("CCM"),

f/k/a Aequitas Capital Opportunities Fund, LP (the "CCM Interests").  The CCM Interests are

held by Receivership Entities as follows:

| Receivership Entity | Percentage Ownership in CCM |
|---|---|
| Aequitas Commercial Finance, LLC | 51.90% |
| Aequitas Private Client, LLC | 12.50% |
| Aequitas Holdings, LLC | 3.64% |
| Aequitas Capital Opportunities GP, LLC | 1.00% |
| **Total:** | **69.04%** |

(Greenspan Decl., ¶ 3).

7.      Notes.  Receivership Property also includes that certain Promissory Note issued

pursuant to a Business Loan Agreement dated as of September 29, 2011, between Aequitas

Commercial Finance, LLC ("ACF"), as lender, and CarePayment Technologies, Inc.

("CarePayment"), as borrower.  Aequitas Corporate Lending, LLC, is the successor in interest

to ACF's interests in the Promissory Note and Business Loan Agreement.  The approximate

balance owing on the Notes is the principal amount of $3,483,723 plus accrued and unpaid

interest of $350,000.  (Greenspan Decl., ¶ 4).

8.      CCM is a $102 million fund formed to make control and minority investments in

small to middle-market financial services companies.  Affiliates of Aequitas Capital

Opportunities GP, LLC (the General Partner and together with its affiliates, "Aequitas")

committed $69.6 million to CCM via the contribution of equity in five companies operating in

the healthcare, education, and financial services/technology industries.  Aequitas contributed

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

equity in a sixth company to CCM after its formation and CCM has made direct investments in two additional companies.  (Greenspan Decl., ¶ 5).

9.      Prior to negotiating the Purchase and Sale Agreement, the Receiver previously sought this Court's approval to sell the CCM Interests, but excluding CCM's ownership interests in CarePayment (the "Stub Portfolio Sale").  On October 31, 2016, following an auction, this Court entered an Order Granting Receiver's Motion to Sell Personal Property Free and Clear of Liens, Interests, Claims and Encumbrances (the "Stub Portfolio Sale Order") to Cedar Springs Capital, LLC and Cedar Springs Special Opportunities, LLC (together, "Cedar Springs").  [Dkt. 283].  (Greenspan Decl., ¶ 7).

10.      The sale approved pursuant to the Stub Portfolio Sale Order has not closed. Pursuant to the Agreement of Purchase and Sale approved by the Stub Portfolio Sale Order, the initial closing deadline was November 30, 2016, unless extended by the parties.  That deadline was extended by mutual agreement to midnight Pacific time, on December 7, 2016.  The closing deadline was made subject to further extension if the Receiver and Cedar Springs agreed to include CarePayment in the transaction.[4]  The parties have now reached such an agreement. (Greenspan Decl., ¶ 8).

11.      The Purchase and Sale Agreement is the result of multiple months of marketing and negotiation to sell the CCM Interests, including CCM's interests in CarePayment, as well as the competitive bidding and auction procedures that resulted in the Stub Portfolio Sale Order. The Receiver seeks authority to implement similar bidding and auction procedures to ensure that the Receivership Entity will obtain the best return possible for the Property.  Therefore the Receiver requests that the Court enter a Bid Procedures Order approving the procedures (the "Bidding Procedures") in connection with the Purchase and Sale Agreement and the proposed Sale to the Stalking Horse Bidder.  The Bidding Procedures are detailed in the proposed Bid

---

[4] Stub Portfolio Sale Order, ¶ 1(k). [Dkt. 283, at p. 12].

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Procedures Order submitted herewith.  (Greenspan Decl., ¶ 9).

B.    Proposed Terms of Sale.

    12.    Pursuant to the Purchase and Sale Agreement the material terms of the Sale will include the following:

    (a)    Property to be Sold: Property (as defined in the Purchase and Sale Agreement), including all of the CCM Interests (including CCM's interests in CarePayment) and the Notes.

    (b)    Owners of the CCM Interests:

| Receivership Entity | Percentage Ownership in CCM |
|---|---|
| Aequitas Commercial Finance, LLC | 51.90% |
| Aequitas Private Client, LLC | 12.50% |
| Aequitas Holdings, LLC | 3.64% |
| Aequitas Capital Opportunities GP, LLC | 1.00% |
| **Total:** | **69.04%** |

    (c)    Purchase Price: $52,000,000.00, in cash at closing, as set forth in the Purchase and Sale Agreement.

    (d)    Principal Conditions to Buyer's Obligation to Close:  The conditions to the Buyer's obligation to close the Sale are set forth in Section 9 of the Purchase and Sale Agreement.

    (e)    Buyer:   Cedar Springs Special Opportunities IV, LP, and CSC Spec Opps IV GP, LLC, or one or more of their affiliates.

    (f)    Buyer's Relation to Receivership Entity or Receiver:  None.

    (g)    Higher and Better Offers.  The Purchase and Sale Agreement will be subject to the submission by third parties of higher or better offers as set

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

forth in the Bid Procedures Order.  In order for other bidders to submit a Qualified Alternative Bid the bid must, among other requirements, be an all cash offer that is not less than $3,000,000 more than the Stalking Horse Bidder's offer.  As discussed below, the $3,000,000 minimum overbid includes payment of the break-up fee of $2,000,000 (the "Break-Up Fee"), and therefore will still yield not less than $1,000,000 in additional net sale proceeds for the Receivership Entity.

(h)    Closing Deadline: The earlier of (i) January 18, 2017, or (ii) seven (7) business days following the date of entry of the Final Sale Order, except if the Final Sale Order is entered prior to January 18, 2017, and there is an appeal or request for reconsideration, the Closing Deadline will be on the earlier of (x) three (3) business days following the date that the Final Sale Order is not subject to modification or reversal on appeal or (y) February 1, 2017.

(i)    The Stalking Horse Bidder's offer is not subject to any finance or due diligence conditions.

(j)    Limited representations and warranties, with standard covenants, indemnities and closing conditions for the purchase and assumption of the Property.

(Greenspan Decl., ¶ 10).

13.    The Purchase Price represents fair value for the Property.  The proposed Sale delivers substantial value to the Receivership Entity, and its creditors and equity owners, including:

(a)    Recovery of approximately $52,000,000 for the Receivership Entity and its stakeholders;

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

(b)     Substantial savings in not incurring the costs of an investment banker nor the myriad transaction costs from selling individually the assets owned by CCM; and

(c)     The auction and overbid component of the proposed Sale ensure that the $52,000,000.00 being obtained at closing for the Property is a market tested value.  If competitive bids are received, the benefit to the Receivership Entity and its creditors and investors will only increase.

(Greenspan Decl., ¶ 11).

14.     The Sale is also beneficial to non-Receivership Entity investors as follows:

(a)     Buyer will offer non-Receivership Entity investors the opportunity to simultaneously monetize their CCM interests on the same terms that are being offered to Seller pursuant to the Purchase and Sale Agreement; and

(b)     Buyer will offer non-Receivership Entity investors the opportunity to participate in the Follow-on Financing.

(Greenspan Decl., ¶ 12).

15.     The negotiations over the terms of the Sale were arm's-length and will be subject to the competitive process outlined above.  The Receiver and his representatives participated personally in those negotiations.  The Receiver believes that Buyer has at all times acted in good faith in connection with the sales process.  The Purchase and Sale Agreement was proposed and negotiated in good faith after arm's-length bargaining by the parties.  The negotiation of the Purchase and Sale Agreement was extensive and protracted.  All of the material terms of the proposed Sale are disclosed.  No side agreements exist between or among any party to the transaction, and there is no relationship between the Seller and Buyer.

(Greenspan Decl., ¶ 13).

Page 10 -    RECEIVER'S MOTION RE ASSET SALE AND
BIDDING PROCEDURES
(CCM Capital Opportunities Fund, LP)

PDX\129912\215141\AP\19468891.12

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

16.    If a Qualified Alternative Bid is received, then after the completion of the auction process the Receiver will, in the sole exercise of his business judgment, determine the highest and best bid for the Property.

17.    The SEC was notified of the intended sale and terms, and does not object to the proposed Sale and Bidding Procedures.  (Greenspan Decl., ¶ 14).

C.    The Terms of the Bidding Procedures and Break-Up Fee.[5]

19.    Buyer will be designated as the "Stalking Horse" bidder for a period not to exceed 14 calendar days after the date of entry of the Bid Procedures Order (the Notice Period, defined below).

20.    During the Notice Period, the Purchase and Sale Agreement is subject to the submission by third parties of higher or better offers as set forth in the Bid Procedures Order.  In order for an alternative bid to be a Qualified Alternative Bid, the bid must, among other things: 1) be made not later than 12:00 Noon Pacific Time on the last day of the Notice Period, 2) be in an amount that is not less than $55,000,000.00, to be paid in cash at closing, 3) provide for the purchase of all of the Property on substantially the same or better terms (as determined in the Receiver's sole discretion) as those set forth in the Purchase and Sale Agreement, and 4) include proof, reasonably satisfactory to the Receiver in his sole discretion, of the bidder's ability to close.

21.    If (i) the Receiver accepts a Qualified Alternative Bid and the Qualified Alternative Bid transaction closes, or (ii) the Buyer terminates the Purchase and Sale Agreement as a result of certain material breaches by Sellers as set forth in the Purchase and Sale Agreement (other than the failure of the Court to enter the Final Sale Order approving the Purchase and Sale Agreement), then Buyer will be entitled to the Break-Up Fee.  The Break-Up Fee shall be due

---

[5] If there is any inconsistency or contradiction between the bidding procedures described in this Motion and the Bidding Procedures set forth in the Bid Procedures Order, the terms of the Bid Procedures Order shall control.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

within five (5) days following the closing of the sale of the Property to a third party bidder.

22.     In the event a Qualified Alternative Bid is received and such sale closes, the Receivership Entity will still realize not less than $1,000,000.00 in additional net sale proceeds for the Receivership Entity.

23.     The Receiver shall be entitled to solicit additional offers for the Property from prospective bidders (each, an "Alternative Bid") for fourteen (14) calendar days following the date of entry of the Bid Procedures Order (the "Notice Period") and, subject to the receipt from the prospective bidders of appropriate confidentiality agreements, provide necessary and requested due diligence to such prospective bidders.  The Receiver proposes the following terms and procedures to govern the submission of Alternative Bids for the Property:

    (i)    Alternative Bid Deadline.  Each Alternative Bid must be provided to the Receiver not later than 12:00 Noon Pacific Time on the date that the Notice Period expires (the "Bid Deadline").

    (ii)    Qualified Alternative Bid.  The Receiver will consider an Alternative Bid only if the Alternative Bid is a "Qualified Alternative Bid."  Without limiting or altering the terms of the Purchase and Sale Agreement, to be a Qualified Alternative Bid, an Alternative Bid must:

        a.    identify the proponent of the Alternative Bid and an officer or representative who is duly authorized in all respects to appear, act on behalf of, and legally bind such proponent (an "Authorized Representative");

        b.    provide for the purchase of all of the Property, and shall otherwise be on substantially the same or better terms as those set forth in the Purchase and Sale Agreement, in the Receiver's sole discretion; provided, however, that an Alternative Bid shall not provide for the payment of a break-up fee or overbid protections because no bidders other than the Stalking Horse Bidder will be entitled to receive a break-up fee and/or any reimbursement of expenses or transaction costs;

        c.    be accompanied by an executed purchase and sale agreement in the form substantially the same as the Purchase and Sale Agreement,

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

except that the structure may be changed so long as the value delivered to the Seller is at least $55,000,000.00, payable in cash at closing, inclusive of the Break-Up Fee;

d.    be a firm offer and not contain any contingencies other than those contained in the Purchase and Sale Agreement, to the validity, effectiveness or binding nature of the offer, including without limitation, contingencies for financing, due diligence or inspection;

e.    be accompanied by financial information for the prospective bidder, including but not limited to financial statements including the prospective bidder's balance sheet or such other information sufficient to enable the Receiver to determine such bidder's creditworthiness and ability to pay the purchase price and close a sale; provided, however, determination that the bidder has met this qualification shall be in the sole discretion of the Receiver;

f.    be open and irrevocable through the conclusion of the Final Hearing unless (i) extended by agreement of the parties or the terms of these Bidding Procedures, or (ii) the Qualified Alternative Bid is designated a Back-Up Bid, which shall then remain open until twenty (20) calendar days following the date that the Final Sale Order becomes a non-appealable order.

24.    If the Receiver receives one or more Qualified Alternative Bids, the Receiver shall conduct an auction (the "Auction") at the offices of Schwabe, Williamson & Wyatt, 1211 SW Fifth Avenue, Suite 1900, Portland, OR 97204 at 10:00 a.m. (Pacific time) on the first (1st) business day following the expiration of the Notice Period, or such later time and date and/or such other place as the Receiver shall notify all bidders who have submitted Qualified Alternative Bids (together, "Qualified Alternative Bidders") and the Stalking Horse Bidder. The following procedures will apply to the Auction:

(i)    Only the following parties and their counsel shall be permitted to attend the Auction: the Stalking Horse Bidder, Qualified Alternative Bidders, and the Receiver. Only the Stalking Horse Bidder and Qualified Alternative Bidders, including through their counsel, shall be permitted to make any additional bids ("Subsequent Bids") at the Auction.

(ii)    All Qualified Alternative Bidders that desire to participate in the Auction shall have their Authorized Representatives physically present for all

Page 13 -    RECEIVER'S MOTION RE ASSET SALE AND
BIDDING PROCEDURES
(CCM Capital Opportunities Fund, LP)

PDX\129912\215141\AP\19468891.12

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

bidding, each with the understanding that the true identity of each Qualified Alternative Bidder shall be fully disclosed to all other Qualified Alternative Bidders and that all material terms, including but not limited to the amount, of each bid will be fully disclosed to all other bidders throughout the entire Auction.

(iii)  The Receiver will give the Stalking Horse Bidder, all other Qualified Alternative Bidders, and their counsel a copy of the highest and best Qualified Alternative Bid received and copies of all other Qualified Alternative Bids prior to the start of the Auction.  In addition, the Receiver will inform the Stalking Horse Bidder and each Qualified Alternative Bidder who has expressed its intent to participate in the Auction of the identity of all Qualified Alternative Bidders that may participate in the Auction.

(iv)  Prior to the start of the Auction the Authorized Representative of the Stalking Horse Bidder and each Qualified Alternative Bidder shall certify, in writing or on the record, as follows:

(a)  Each bid it makes at the Auction shall, if accepted by the Receiver, constitute a binding and legally enforceable contract of the bidder to timely close a purchase of the Property according to the terms of the bid in the event an order of the Court is entered approving a sale based upon such bid.

(b)  No bids made by the Stalking Horse Bidder or a Qualified Alternative Bidder, whether before or during the Auction, shall be subject to any conditions or contingencies related to due diligence, financing, or any other further approval other than the Authorized Representative present at the Auction.

(c)  The Authorized Representative present for the Stalking Horse Bidder or a Qualified Alternative Bidder at the Auction has the full power and authority to act on behalf of and to legally bind the Stalking Horse Bidder or such Qualified Alternative Bidder for any bids made, and any agreements entered into at or in connection with the Auction.

(d)  The Stalking Horse Bidder and each Qualified Alternative Bidder that participates in the Auction shall authorize the Receiver to conditionally accept such bidder's second-highest bid at the Auction as a back—up to the Successful Bid, which shall become binding upon and enforceable against such bidder in the event that the Successful Bid is approved by the Court, but such Successful

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Bidder fails or otherwise refuses to close its purchase of the Property for any reason other than a material failure of performance by the Seller.

(e)     That the Stalking Horse Bidder and each Qualified Alternative Bidder has at all times proceeded in good faith in submitting its bids, and has not engaged in any collusion with any other person or bidder with respect to the Auction and related proceedings.

25.     The Receiver shall have reasonable discretion with respect to the conduct of the Auction.  Among other things, the Receiver may announce at the Auction additional procedural rules that he determines to be reasonable under the circumstances (e.g. the amount of time allotted to make subsequent alternative bids) for conducting the Auction so long as such additional rules are not materially inconsistent with the Bidding Procedures and the terms, deadlines, and intent of the Purchase and Sale Agreement.

(i)     At the Auction, bidding shall begin with the highest and best Qualified Alternative Bid (the "Initial Overbidder").  The Receiver will identify the Initial Overbidder at the beginning of the Auction.  Any subsequent bids must be at least $250,000 more than the immediately preceding bid and each such increment (including the initial increment over the Purchase Price) must be payable in cash ("Minimum Subsequent Overbid Amount").  In any of its subsequent bids, the Stalking Horse Bidder shall be entitled to credit bid up to the sum of the Break-Up Fee, provided that the Stalking Horse Bidder shall recover the sum of the Break-Up Fee directly from, and only from, the cash paid by the Successful Bidder in the event that the Court enters a sale order authorizing a sale of the Property to a buyer other than the Stalking Horse Bidder.

(ii)     The Auction, at the discretion of the Receiver, shall be recorded by stenographer or other reliable means of preserving the record of the Auction proceedings, and shall continue in one or more rounds of "open cry," or publically announced bidding and shall conclude after each participating bidder has had the opportunity, within any time period specified by the Receiver, to submit an additional Subsequent Bid with full knowledge of the then-existing highest bid.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

(iii) For the purpose of evaluating the value of the consideration provided by each Subsequent Bid (including any Subsequent Bid by the Stalking Horse Bidder), the value shall be the net cash consideration payable to the Seller after giving effect to the Break-Up Fee that may be payable to the Stalking Horse Bidder under the Purchase and Sale Agreement and the Bid Procedures Order.

(iv) At the conclusion of the bidding, the Receiver shall announce his determination (pursuant to the following paragraph) as to the bidder (the "Successful Bidder") submitting the highest and best bid (the "Successful Bid"), which shall be submitted to the Court for approval at the Final Hearing. The Stalking Horse Bidder shall be deemed a party-in-interest with standing to appear and be heard in connection with any motions, objections, hearings, or other proceedings related to this Motion, the Purchase and Sale Agreement, the Auction, and any Qualified Alternative Bid, Subsequent Bid, or the Successful Bid.

(v) In determining the Successful Bid to submit to the Court for approval, the Receiver, in his sole discretion and in consultation with his professionals, shall determine whether a Qualified Alternative Bid constitutes a higher and better offer than the bid of the Stalking Horse Bidder. In making that determination, the Receiver may consider any and all factors associated with all Qualified Alternative Bids and Qualified Alternative Bidders, including but not limited to factors such as the likelihood and ability of the proposed buyer(s) to immediately consummate and close the proposed transactions, other timing issues, employment issues, overall value of the Qualified Alternative Bids, and any other material factors.

(vi) The Court shall set a deadline in the Bid Procedures Order for filing objections to the Motion or entry of the Final Sale Order (the "Objection Deadline"). Any objections to the Motion or entry of the Final Sale Order that are not filed with the Court by the Objection Deadline shall be deemed irrevocably waived and withdrawn.

(vii) If the Receiver does not timely receive any Qualified Alternative Bids, the Receiver shall forthwith cancel the Auction and promptly present the Final Sale Order for entry by the Court at the Final Hearing.

(viii) If, following the entry of the Final Sale Order approving a sale to the Successful Bidder, such Successful Bidder fails or otherwise refuses to consummate such sale, then the next highest or best bid shall be deemed as the back-up bid (the "Back-Up Bid" and, such bidder, the "Back-Up Bidder") and the Seller will be obligated to effectuate a sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without further order

Page 16 -    RECEIVER'S MOTION RE ASSET SALE AND
BIDDING PROCEDURES
(CCM Capital Opportunities Fund, LP)
PDX\129912\215141\AP\19468891.12

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

of the Court.  The Back-Up Bid shall remain open until twenty (20) calendar days following the date that the Final Sale Order becomes a non-appealable order.  All Qualified Alternative Bids (other than the Successful Bid and the Back-Up Bid) shall be deemed rejected by the Receiver on and as of the date of entry of the Final Sale Order by the Court.

D.     Repayment of the CP Holdings Loan.

26.     CarePayment, as Lender, and CarePayment Holdings, LLC ("CP Holdings"), as Borrower, are parties to a Business Loan Agreement dated effective as of February 22, 2016, as amended on February 26, 2016 (the "CP Holdings Loan").  CP Holdings is part of the Receivership Entity.  The records and files of the Receivership Entity reflect that the pre-receivership balance owing on the CP Holdings Loan is the amount of $775,000, exclusive of accrued interest and other charges.  Pursuant to the Final Receivership Order, the Receiver seeks authority to repay the CP Holdings Loan (Greenspan Decl., ¶ 22).

**III.    Points and Authorities.**

27.     Pursuant to the Final Receivership Order, the Receiver may sell assets "outside the ordinary course of business…only with Court approval after reasonable notice under the circumstances and an opportunity for interested parties to be heard."  (Final Receivership Order, ¶ 26).  Here, sale of the Property is outside of the ordinary course of the Receivership Entity's business, so this Court's approval is required.

28.     Estate assets such as the Property may be sold "free and clear of any liens, claims or encumbrances, with such liens, claims or encumbrances attaching to the proceeds" of sale. (*Id*.).  Pursuant to the Final Receivership Order, the Sale of the Property shall be free and clear of any and all Liens.  In connection with the closing of the Sale and the satisfaction of the conditions contemplated therein, all Liens as of the date of the closing of the Sale shall be released as against the Property, and shall attach to the proceeds of Sale to the same extent, validity, and priority as they attached to the Property.  (Greenspan Decl., ¶ 15).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

29.    To the best of the Receiver's knowledge, after diligent investigation, there are no Liens against the Property other than the following:

(a)    Terrell Group Management, LLC claims a security interest in substantially all of the personal property of Aequitas Corporate Lending, LLC ("ACL"), including ACL's loans to CarePayment, as collateral for its loans to ACL;

(b)    LeaseDimensions, Inc., as Collateral Agent for Aequitas Commercial Finance Private Note Investors, claims a security interest in substantially all of the personal property of Aequitas Commercial Finance, LLC.

(c)    LeaseDimensions, Inc., as Collateral Agent for Aequitas Private Client Fund Investors, claims a security interest in substantially all of the personal property of Aequitas Private Client Fund, LLC; and

(d)    Aequitas Commercial Finance, LLC, claims a security interest in substantially all of the personal property of Aequitas Holdings, LLC.

(Greenspan Decl., ¶ 16).

30.    The Receiver's proposed sale of the Property free and clear of Liens is comparable to a bankruptcy trustee's sale of assets in a bankruptcy proceeding under Section 363 of the Bankruptcy Code.  11 USC § 363.  That section authorizes a trustee, "after notice and a hearing, [to] use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 USC § 363(b)(1).  This provision generally allows a debtor in possession to sell property of the estate outside the ordinary course of business where the proposed sale is within the sound exercise of the trustee's business judgment and when the sale is proposed in good faith and for fair value.  *See In re Lionel Corp.*, 722 F2d 1063, 1070-71 (2nd Cir 1983).  When a trustee or debtor articulates a reasonable basis for its business decisions, the "court will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 BR 612, 616 (Bankr SDNY 1986).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

31.    The Sale is proposed in good faith.  "'Typically, the misconduct that would destroy a buyer's good faith status at a judicial sale involves fraud, collusion between the buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F2d 143, 147 (3d Cir 1986) (quoting *In re Rock Indus. Mach. Corp.*, 572, F2d 1195, 1198 (7th Cir 1978)).  Here, the Purchase and Sale Agreement was proposed and negotiated in good faith after arm's-length bargaining by the parties.  The negotiation of the Purchase and Sale Agreement was extensive and protracted.  All of the material terms of the proposed Sale are disclosed.  No side agreements exist between or among any party to the transaction, and there is no relationship between the Seller and the Stalking Horse Bidder.

32.    The proposed Sale is contractually subject to the Receiver's receipt of higher and better offers through a bidding and auction process.  The Receiver seeks authority to implement procedures to ensure that the Receivership Entity will obtain the best return possible.

33.    The proposed Bidding Procedures are in the best interest of the Receivership Entity, and its creditors and investors.  The Bidding Procedures are designed to strike a balance between inviting competing bids and enabling the Receiver to close a sale with the Stalking Horse Bidder within a reasonable time frame.  (Greenspan Decl., ¶ 17).

34.    The Break-Up Fee ($2,000,000) is approximately 3.84% of the Purchase Price, and falls within a customary range for such fees.[6]  (Greenspan Decl., ¶ 18).

35.    In addition, the Break-Up Fee is supported by Buyer incurring and paying the legal and business expenses associated with the significant negotiating and drafting efforts to reach the Purchase and Sale Agreement, and additional expenses will be incurred to finalize the Purchase and Sale Agreement.  Buyer also communicated in the negotiation process that it was

---

[6] *See* Harvard Law School Forum on Corporate Governance and Financial Regulation, "Breakup Fees-Picking Your Number, available at https://corpgov.law.harvard.edu/2012/09/11/breakup-fees-picking-your-number/.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

not willing to move forward with negotiations if a break-up fee was not part of the agreement. (Greenspan Decl., ¶ 19).

36.    Here, the Break-Up Fee was an integral part of the Stalking Horse Bidder's offer. In fact, the Stalking Horse Bidder's offer to purchase the Property was and remains conditioned on the Court's approval of the Break-Up Fee. The Receiver submits that the Stalking Horse Bidder should be reasonably reimbursed for its willingness to assume the role of the "stalking horse" as it is the only party ready and willing to serve in such role for all of the interests in CCM, including CarePayment. Accordingly, the Receiver respectfully submits that this Court should authorize and approve the Bidding Procedures, including the Break-Up Fee. (Greenspan Decl., ¶ 20).

37.    The Bidding Procedures are fair, reasonable and necessary to promote the highest and best sale price, without imposing undue obstacles to the competitive bid process. Further, a receiver often employs bidding protections in order to encourage the making of an original offer subject to higher and/or better offers and ultimately to increase value. (Greenspan Decl., ¶ 21).

38.    Buyer has no known relation to the Receiver or the Receivership Entity. (Greenspan Decl., ¶ 10(f)).

39.    In short, the Sale is an arm's-length transaction, proposed in the sound exercise of the Receiver's business judgment, in good faith and for fair value. The Sale is in the best interests of the Receivership Entity, and its creditors and investors.

40.    Pursuant to the Final Receivership Order, the Receiver is authorized to make "any legally required payment to creditors…of the Receivership Entity.[7] Here, in the exercise of the Receiver's business judgment, it is in the best interest of the Receivership Entity to repay the CP Holdings Loan.

---

[7] Final Receivership Order, ¶ 27.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

**IV.    Conclusion.**

1.      For the foregoing reasons, the Receiver respectfully requests that this Court immediately enter the Bid Procedures Order (substantially in the form submitted herewith):

    (a)    Scheduling the Final Hearing on January 10, 2017, or as soon thereafter as the Court can schedule the Final Hearing;

    (b)    Approving (i) the Bidding Procedures, (ii) Buyer as the "stalking horse bidder", and (iii) the Break-Up Fee and payment thereof under the terms set forth in the Purchase and Sale Agreement and the Bid Procedures Order;

    (c)    Setting a deadline and establishing requirements and procedures for competing offerors to submit Qualified Alternative Bids, as set forth in the Bidding Procedures; and

    (d)    Setting a deadline that is not less than two (2) business days prior to the Final Hearing date for filing objections to the Motion or entry of the Final Sale Order.

2.      The Receiver further requests that the Court, at the Final Hearing, enter the Final Sale Order, which will request the following:

    (a)    Authorize and approve the Purchase and Sale Agreement;

    (b)    Authorize the sale of the Property under the terms and conditions of the Purchase and Sale Agreement to the Stalking Horse Bidder, or another Successful Bidder free and clear of all Liens, and authorize any additional relief consistent with the foregoing and as necessary to allow the proposed transaction to be consummated; and

\ \ \

\ \ \

\ \ \

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

     (c)      Authorize the Receivership Entity to repay the CP Holdings Loan.

Dated this 16th day of December, 2016.

                    Respectfully submitted,

                    SCHWABE, WILLIAMSON & WYATT, P.C.


By:      /s/ Alex I. Poust
            Troy D. Greenfield, OSB #892534
            tgreenfield@schwabe.com
            Joel A. Parker, OSB #001633
            jparker@schwabe.com
            Jeffrey S. Eden, OSB #851903
            jeden@schwabe.com
            Alex I. Poust, OSB #925155
            apoust@schwabe.com
            Lawrence R. Ream (Admitted *Pro Hac Vice)*
            lream@schwabe.com
            Telephone: 503.222.9981
            Facsimile: 503.796.2900


            Ivan B. Knauer (Admitted *Pro Hac Vice)*
            knaueri@pepperlaw.com
            Brian M. Nichilo (Admitted *Pro Hac Vice)*
            nichilob@pepperlaw.com
            PEPPER HAMILTON LLP
            600 Fourteenth Street, N.W.
            Washington, DC 2005
            Tel: (202) 220-1665


            Attorneys for the Receiver for Defendants
            Aequitas Management, LLC, Aequitas
            Holdings, LLC, Aequitas Commercial
            Finance, LLC, Aequitas Capital
            Management, Inc., and Aequitas Investment
            Management, LLC

Page 22 -   RECEIVER'S MOTION RE ASSET SALE AND
             BIDDING PROCEDURES
             (CCM Capital Opportunities Fund, LP)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900