**Troy Greenfield**, OSB #892534
Email: tgreenfield@schwabe.com
**Alex I. Poust**, OSB #925155
Email: apoust@schwabe.com
**Lawrence R. Ream** (Admitted *Pro Hac Vice*)
Email: lream@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Facsimile: 503-796-2900

**Ivan B. Knauer** (Admitted *Pro Hac Vice*)
Email: iknauer@swlaw.com
SNELL & WILMER LLP
1101 Pennsylvania Ave., N.W., Suite 300
Washington, DC 20004
Telephone: 202-802-9770
Facsimile: 202-688-2201

*Attorneys for Receiver for Defendants*
*Aequitas Management, LLC; Aequitas Holdings, LLC; Aequitas*
*Commercial Finance, LLC; Aequitas Capital Management, Inc.;*
*Aequitas Investment Management, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | No. 3:16-cv-00438-JR |
| Plaintiff, | **RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF** |
| v. | |
| AEQUITAS MANAGEMENT, LLC; AEQUITAS HOLDINGS, LLC; AEQUITAS COMMERCIAL FINANCE, LLC; AEQUITAS CAPITAL MANAGEMENT, INC.; AEQUITAS INVESTMENT MANAGEMENT, LLC; ROBERT J. JESENIK; BRIAN A. OLIVER; and N. SCOTT GILLIS, | |

Page 1    RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Defendants.

**TABLE OF CONTENTS**

LR 7-1 CERTIFICATION ........................................................................................................... 3

MOTION ................................................................................................................................... 3

POINTS AND AUTHORITIES ............................................................................................... 6

    I.      Procedural and Fact Background ........................................................................ 6

    II.     Administration of Receivership Estate and Tax Implications ............................... 8

          A.     The Receiver seeks the Court's approval to establish a Qualified Settlement Fund because a Qualified Settlement Fund will best serve the interests of the Receivership Estate and Claimants. ................... 8

          B.     Changes to Oregon's tax code will take effect on January 1, 2020, and potentially create significant new tax liabilities that the Receiver intends to avoid by creating the Qualified Settlement Fund now. ............................................................................................... 12

          C.     The proposed Qualified Settlement Fund satisfies the Internal Revenue Code and regulations with respect to the formation of a Qualified Settlement Fund. ................................................................... 13

          D.     Administrator and Trustee of the Qualified Settlement Fund .................. 15

          E.     Qualified Settlement Fund tax compliance ............................................... 15

    III.    MEANS TO EFFECT DISTRIBUTIONS ......................................................... 15

          A.     Distributions from Qualified Settlement Fund ......................................... 15

          B.     The Receivership Estate retains Third Party Claims, Avoidance Actions, and claims for Disgorgement of Ill-Gotten Gains. .................... 16

    IV.    RETENTION OF JURISDICTION ..................................................................... 17

CONCLUSION ...................................................................................................................... 17

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

## LR 7-1 CERTIFICATION

On December 16, 2019, the undersigned circulated to the approximately 70 counsel of record, via email, a version of this motion (and supporting declaration and proposed form of order) that is substantially the same as this filed version. The conferral requested that counsel respond by 12:00 noon (Pacific time) on December 23, 2019, as to whether their clients object or consent to the motion. As of the time of filing this motion the undersigned had received one (1) consent and no objections.

## MOTION

Ronald F. Greenspan, the duly appointed Receiver ("Receiver") for the Receivership Estate, hereby moves (the "Motion") this Court for the entry of an order relating to a Qualified Settlement Fund (the "QSF"), which will be a trust under Oregon law (governed by the trust agreement attached hereto and incorporated herein as <u>Exhibit 1</u>), created for certain tax purposes, established to resolve or satisfy claims of liability against the Receivership Estate, and will become the source of payment of Allowed Claims against the Receivership Estate and the costs of administration, including the Receiver and his Professionals. The QSF is being created to effectuate a distribution of the Receivership Estate's assets, which are insufficient to pay all legitimate claims (including legitimate claims held by Investors) against the Receivership Entity in full. Cash assets will be transferred to the QSF, along with certain entities that hold portfolios of accounts receivable, which assets will continue to be liquidated. Certain other assets, including Third Party Claims, Avoidance Actions, and other Claims for Disgorgement of Ill-Gotten Gains, may be retained by the Receivership Estate and prosecuted, settled, and/or used to offset claims

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

against the Receivership Estate or may be transferred to the QSF, at the discretion of the Receiver.[1] Periodically, as the Receivership Estate's claims are liquidated, the Receiver anticipates transferring further cash assets to the QSF. Cash assets will be held in the QSF pending this Court's consideration of the Receiver's proposed distribution plan[2] or other further order of the Court and thereafter distributed as ordered by this Court.

By the Motion, the Receiver asks this Court to:

(1) Order that the QSF, substantially in the form set forth in <u>Exhibit 1</u>, be established, including appointing Mr. Greenspan as the trustee and administrator of the QSF;

(2) Order that upon approval of this Motion, the cash assets held by the Receivership Estate and certain Aequitas entities to be selected by the Receiver[3] are the property

---

[1] "Third-Party Claims" are the legal and equitable rights held by the Receiver on behalf of the Receivership Estate to recover money from third parties.

"Avoidance Actions" are all rights, claims, and causes of action, whether equitable or legal, that could have been brought by the Receivership Estate or any of its Investors or other Claimants, against all persons arising under any provision of state or federal law, including those for the recovery of avoidable fraudulent conveyances or other transfers or under any other state or federal law are reserved for and shall be assigned and transferred to the QSF to the full extent allowed by law. Avoidance Actions include actions for the Disgorgement of Ill-Gotten Gains.

A claim for the "Disgorgement of Ill-Gotten Gains," is the right of Receiver to recover commissions, fees, distributions, and profits from parties who participated in the solicitation of or defrauding of Investors.

[2] Based on the Receiver's forensic investigation and after soliciting input from the SEC and the Investor Advisory Committee members (who number in excess of 57 and represent all of the major groups of Aequitas Investors), the Receiver continues to refine his proposed distribution plan, which contains numerous interrelated components and compromises that together provide the most equitable treatment of Allowed Claims. The proposed distribution plan will be presented shortly to the court for consideration and approval.

[3] Given the complexity and intricacies of the Aequitas Enterprise, and by extension the Receivership Estate, the Receiver notes that it may transfer ownership interests of certain Aequitas Entities to the QSF, as opposed to the assets of those entities because the continued existence or operation of such entity may be in the best interest of the Receivership Estate. In such a case, the Receiver represents that the QSF Trustee will continue to file federal and state income tax returns for each such entity, as necessary. *See infra* Section II.A.

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

of the QSF, and the Receiver, trustee, and administrator are authorized to take steps to confirm such ownership change, including retitling such assets to reflect the ownership of the QSF;

(3) Approve the use of the assets transferred to the QSF to satisfy claims against the Receivership Estate, to pay the costs of administration of the QSF and the Receivership, including the fees and costs of the Receiver and his Professionals as approved by the Court;

(4) Take and retain continuing jurisdiction over the QSF pursuant to Income Tax Regulations, 26 C.F.R. § 1.468B-1(c), and, relatedly, Mr. Greenspan in his capacity as the trustee and administrator of the QSF;

(5) Order that all provisions of the Order Appointing Receiver [Dkt. 156] shall govern the rights, duties, and powers of all persons, governmental entities, and courts in relation to the QSF, the assets of the Receivership Estate transferred into the QSF, and all actions taken in relation to the QSF, including without limitation in relation to the Receiver serving as trustee and administrator of the QSF and any persons or professionals relied upon by the Receiver in those additional capacities; and

(6) Order that all holders of Allowed Claims must submit a Form W-4 ("Employee's Withholding Allowance Certificate") or Form W-9 ("Request for Taxpayer Identification Number and Certification"), as appropriate upon request by the Receiver, and that any associated distribution may be withheld if the holder of the Allowed Claim fails to comply with the Receiver's request (and this Court's Order) to provide such tax or other information needed by the Receiver to effectuate the distribution plan.

As described below, the QSF, as the trust vehicle chosen by the Receiver, has various tax

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

benefits which will inure to the benefit of the claimants. The Receiver and his professionals have concluded that establishing the QSF and transferring the assets of the Receivership Estate to the QSF before year-end will avoid arguments that the changes to Oregon's tax code creates tax liabilities for the Receivership Estate that, the Receiver and his professionals have estimated, could under some scenarios be approximately $1 million.

This Motion is supported by the records and files herein, and the following memorandum of Points and Authorities.

## POINTS AND AUTHORITIES

### I.    Procedural and Fact Background

On March 16, 2016, pursuant to the Stipulated Interim Order Appointing Receiver,[4] Mr. Greenspan was appointed as Receiver for the Receivership Entity on an interim basis. On April 14, 2016, Mr. Greenspan was appointed as Receiver for the Receivership Entity on a final basis by the Court's Order Appointing Receiver (the "Final Receivership Order").[5]

Since the Receiver's appointment, he has exercised his Court-authorized powers and duties, marshalling and liquidating Receivership assets, developing and administering the claims process,[6] investigating and filing his Forensic Report,[7] facilitating Investors' third-party litigation and settlement of claims against the pre-Receivership professionals of the Aequitas Enterprise, and

---

[4] Dkt. 30.

[5] Dkt. 156. Capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Final Receivership Order; the Receiver's Report Regarding the Investigation of the Receivership Entity's Business Conduct (the "Forensic Report") [Dkt. 663]; and the Receiver's Motion for Order (1) Establishing Claims Bar Date, (2) Approving the Form and Manner of Notice, and (3) Approving the Proof of Claim Form, Procedures and Other Related Relief [Dkt. 681].

[6] Order Establishing the Claims Bar Date [Dkt. 683]. The Claims review is in process.

[7] Forensic Report [Dkt. 663].

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

providing timely reports to this Court.[8]

As shown in the Forensic Report, the entities that comprise the Receivership Entity were insolvent from at least July 1, 2014 onward.[9] Yet the enterprise continued raising funds.[10] Indeed, from January 1, 2014 to March 10, 2016, those entities' indebtedness to Investors exploded from $369.0 million to $617.6 million; however, the investment net of institutional debt by Aequitas in consumer receivables actually *decreased* from the fourth quarter of 2013 to the first quarter of 2016.[11]

These factors—insolvent entities, increasing indebtedness, and decreasing net investment—as well as many other factors addressed in the Forensic Report meant that, at least from the outset of this Receivership proceeding (and, indeed, much earlier), it was reasonably certain that the Receivership Entity's indebtedness to Investors as a class would never be repaid in whole. That conclusion has been furthered with the Receiver's filing of each quarterly report and the Forensic Report, all of which disclose that the Receivership Entity's indebtedness, including to Investors, was many times greater than its assets. In contrast to its $617.6 million in indebtedness to Investors on March 10, 2016, the most recent quarterly report reflects that the Receivership Entity "had cash balances of approximately $120.9 million as of September 30, 2019."[12]

The Receiver has stabilized the Receivership Entity, preserved value when possible, and facilitated the monetization of a majority of the Receivership's assets. The Receivership Estate's assets include various bank accounts (i.e., cash from liquidated assets) and non-liquidated assets

---

[8] Receiver's October 31, 2019 Report [Dkt. 776] (covering the most recent quarterly period from July 1, 2019 through September 30, 2019).

[9] Forensic Report [Dkt. 663] at 8 and 9 n. 16.

[10] *Id.* at 8.

[11] *Id.* at 8 and 91.

[12] Receiver's October 31, 2019 Report [Dkt. 776] at 39.

Page 7      RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

(primarily account receivables and some investments) as well as Third Party Claims, Avoidance Actions, and other Claims for Disgorgement of Ill-Gotten Gains. The Receiver and his team have expended significant effort developing a proposed distribution plan, performing related analyses, and investigating options related to the future administration and wind down of the Receivership. While the Receiver anticipates filing a motion seeking approval of a distribution plan before year-end, orders approving such a plan are unlikely to become final during 2019. In relation to effectuating the distribution plan, the Receiver and his professionals have determined that, for tax purposes, a QSF is the best vehicle for making distributions to holders of Allowed Claims, including Investors and other Claimants later found to have Allowed Claims. Further, to mitigate certain potential tax consequences to the Receivership Estate under Oregon law, the creation and transfer of assets to the QSF should be approved by the Court before January 1, 2020. As noted above, the Receiver and his professionals estimate the potential tax savings to the Receivership Estate from implementing the QSF by year-end at approximately $1 million.

## II.    Administration of Receivership Estate and Tax Implications

### A.    The Receiver seeks the Court's approval to establish a Qualified Settlement Fund because a Qualified Settlement Fund will best serve the interests of the Receivership Estate and Claimants.[13]

The Receiver considered alternative distribution vehicles before he decided to use a QSF as the vehicle to distribute the Receivership Estate's assets. The Receiver concluded that a QSF was the best option because it provides the greatest flexibility to the Receiver and also allows the parties to derive the tax benefits associated with QSFs, as set forth in the Internal Revenue Code, 26 U.S.C. § 468B, and Internal Revenue Service Regulations, 26 C.F.R. §§ 1.468B-1 – 1.468B-5 (the "QSF Regulations"), and as further explained below. The Receiver emphasizes that

---

[13] A copy of the QSF Trust is attached hereto as Attachment 1.

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Receivership Estate assets transferred to the QSF shall remain there, pending the Court's order on a distribution plan or other further order of the Court.

At the most basic level, the QSF allows the Receivership to control when certain taxable events associated with distributions to holders of Allowed Claims occur for the Receivership. In the absence of a QSF, the Internal Revenue Code and its implementing regulations would ordinarily prevent a receivership from deducting a settlement payment for a tort, breach of contract, or violation of the law until holders of such claims receive a distribution. That is because receipt of payment is typically when "economic performance" occurs for purposes of a settlement of such a claim between a plaintiff (e.g., a person that has been defrauded) and a defendant (e.g., a Ponzi-scheme operator).[14] Here, that would mean that, for purposes of its tax liabilities, the Receivership Estate would be unable to deduct settlement payments to holders of Allowed Claims until those funds were actually received by the respective holders of such Allowed Claims.

A QSF, however, provides an exception to that general rule. Instead of "economic performance" occurring upon *receipt* by the plaintiff, use of a QSF generally means that "economic performance" occurs when the transferor (here, the Receivership Estate) *makes the transfer* to the QSF.[15] Accordingly, the Receivership Estate as transferor receives a tax timing benefit. Moreover,

---

[14] *See* 26 U.S.C. § 461(h)(2)(C).

[15] 26 C.F.R. § 1.468B-3(c)(1). *See also* 26 U.S.C. § 461 (h). The Receiver notes that, even for QSFs, there are circumstances in which "economic performance" does not occur when the transferor makes the transfer to the QSF. For example, 26 C.F.R. § 1.468B-3(a)(1), states:

> Because the issuance of a transferor's debt, obligation to provide services or property in the future, or obligation to make a payment described in section 1.461-4(g), is generally not a transfer of property by the transferor, it generally does not result in gain or loss to the transferor under this paragraph[.]

The Receiver, as QSF Administrator, will take this into account when performing calculations related to the QSF.

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

the Receiver anticipates that, in conjunction with transferring assets and entities to the QSF, most of Receivership Entities will be able to submit their final income tax returns, eliminating the cost of preparing and filing yearly tax returns for most Aequitas Entities. Moreover, as described in Section II.B below, the timing of the creation and transfer of assets prior to year-end avoids some potential tax liabilities under Oregon law.

Below, the Receiver summarizes the QSF Regulations' tax consequences and benefits in relation to: (1) the QSF; (2) transfers made to the QSF; and (3) any distributions made from the QSF.

### 1.    *In general*

For tax purposes, a QSF is considered a United States person and subject to a tax rate on its modified gross income ("MGI") equal to the maximum rate in effect for that tax year under section 1(e) of the Internal Revenue Code.[16] In general, the QSF's MGI is gross income, as defined by section 61 of the Internal Revenue Code, modified by the rules set forth in 26 C.F.R. 1.468B-2(b).

### 2.    *To the Receivership Estate*

In general, a transferor[17] (here, the Aequitas Entities that comprise the Receivership Estate) must treat a transfer of property to the QSF as a sale or exchange of property for purposes of

---

[16] 26 C.F.R. § 1.468B-2(a). For tax year 2019, that rate is 37%. *See* 26 U.S.C. § 1(j)(2)(e).

[17] The QSF Regulations define a "transferor" as "a person that transfers (or on behalf of whom an insurer or other person transfers) money or property to a qualified settlement fund to resolve or satisfy claims described in paragraph (c)(2) of this section against that person." 26 C.F.R. § 1.468B-1(d)(1). If a person, other than a "transferor" as defined by the QSF Regulations, transfers property to the QSF, there may be other tax consequences that are not governed by the QSF Regulations. In such a case, those transfers are governed under general federal income tax principles. 26 C.F.R. § 1.468B-3(a)(1).

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Internal Revenue Code, 26 U.S.C. § 1001(a).[18] Thereafter, the QSF's initial basis in property it receives is the property's fair market value on the date of the transfer to the QSF.[19] In addition, the Receiver notes that the QSF Regulations require a qualified appraisal for certain property transferred to the QSF, and asserts that it will follow those requirements as needed.[20]

### 3.    To the holders of Allowed Claims

The question of whether a distribution from a QSF is includible in the gross income of a holder of an Allowed Claim is determined by looking to the claim with respect to which the distribution is made, as if the distribution was made directly by the transferor.[21] Given that distributions will be made from the QSF to the holder of an Allowed Claim, the Receiver has determined that the administrator and trustee of the QSF may require certain information be collected from Allowed Claim holders before certain distributions can be made from the QSF in order for the QSF to comply with certain reporting requirements in the Internal Revenue Code. Accordingly, the Receiver requests that this Court require all holders of Allowed Claims, upon request by the Receiver (whether in that capacity or as trustee or administrator of the QSF), submit an Employee's Withholding Allowance Certificate or a Request for Taxpayer Identification Number and Certification, as appropriate.

More importantly, the Receiver emphasizes that no tax advice is being provided to any interested party (including holders of Allowed Claims) and parties should not rely on information in this Motion as tax advice because the Receiver has not made any attempt to analyze or evaluate the actual or potential tax consequences of distributions from the QSF to any interested party. Each

---

[18] 26 C.F.R. § 1.468B-3(a)(1).

[19] 26 C.F.R. § 1.468B-2(e).

[20] 26 C.F.R. § 1.468B-3(b).

[21] 26 C.F.R. § 1.468B-4.

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

interested party should instead consult with their own tax advisors to determine the effects of U.S. Federal, State, Local, and Non-U.S. Tax Rules with respect to the tax consequences of a distribution from the QSF to them. The Receiver further emphasizes that no opinion as to the existence, non-existence, nature, or extent of such potential tax consequences is made or intended by this Motion, and that the Receiver has not requested, nor intends to request, any rulings, or opinions from the Internal Revenue Service or any state, local, or foreign tax authority with respect to any of the tax aspects of a distribution pursuant to a proposed distribution plan and from the QSF.

Finally, although the Receiver (including in his capacity as trustee and administrator of the QSF) will use his best efforts to ensure all withholding, reporting, certification, and information requirements imposed by any federal, state, local, or foreign tax authorities are met, he, nevertheless, emphasizes that: (1) each holder of an Allowed Claim shall ultimately be liable for any tax obligation arising from any distribution from the QSF to such holder of an Allowed Claim; (2) to the extent the trustee and administrator of the QSF deducts or withholds any amount of a distribution from the QSF to any holder of an Allowed Claim to comply with federal, state, local, or foreign tax requirements, such deduction or withholding shall be treated as if distributed to such holder of an Allowed Claim; and (3) the trustee and administrator of the QSF has the right to withhold any distribution that a holder of an Allowed Claim would otherwise be entitled to under the distribution plan if the holder of an Allowed Claim has failed to comply with the Receiver's request to provide tax or other information needed by the Receiver to effectuate the distribution plan.

> **B.      Changes to Oregon's tax code will take effect on January 1, 2020, and potentially create significant new tax liabilities that the Receiver intends to avoid by creating the Qualified Settlement Fund now.**

During the 2019 Legislative Session, Governor Brown signed into law House Bill ("HB")

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

3427 and HB 2164, which will create a new tax entitled the "Corporate Activity Tax" (the "CAT"), effective January 1, 2020, which focuses on the commercial activities of affected taxpayers. For purposes of the CAT, "commercial activity" means "the total amount realized by a person, arising from transactions and activity in the regular course of the person's trade or business, without deduction for expenses incurred by the trade or business."[22] As a new tax, there are substantial uncertainties about how or whether it would apply in the context of a common law receivership instituted after the individual SEC defendants operated entities under their control as a Ponzi-scheme and the inadequacy of funds to repay defrauded Investors has been evident prior to and throughout the receivership proceeding.

In light of such uncertainties, the Receiver seeks to establish the QSF prior to January 1, 2020, to avoid argument by the Oregon Department of Revenue that cancellation of debt income occurred after December 31, 2019 and should be deemed "commercial activity" for purposes of the CAT. The Receiver has concluded that the Receivership Estate's tax liabilities associated with the CAT if the QSF is established *after* January 1, 2020, could be approximately $1,000,000 under a worst-case scenario. Because funds to pay any tax liabilities associated with the CAT would otherwise be available for distribution to the holders of Allowed Claims, it is therefore in the best interests of the Receivership Estate and its creditors to establish the QSF and transfer assets to it before January 1, 2020.

### C.    The proposed Qualified Settlement Fund satisfies the Internal Revenue Code and regulations with respect to the formation of a Qualified Settlement Fund.

Income Tax Regulation 26 C.F.R. § 1.468B-1(c) sets forth the requirements that a fund, account, or trust must meet in order to qualify as a QSF under the Internal Revenue Code. That

---

[22] HB 3427 § 58(1)(a). Certain activities are excluded from the definition of "commercial activities, HB 3427 § 58(1)(b).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

section states:

> A fund, account, or trust satisfies the requirements of this paragraph (c) if --
>
> (1) It is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) of any of the foregoing and is subject to the continuing jurisdiction of that governmental authority;
>
> (2) It is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and that has given rise to at least one claim asserting liability --
>
>> (i) Under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 * * *; or
>>
>> (ii) Arising out of a tort, breach of contract, or violation of law; or
>>
>> (iii) Designated by the Commissioner in a revenue ruling or revenue procedure; and
>
> (3) The fund, account, or trust is a trust under applicable state law, or its assets are otherwise segregated from the other assets of the transferor (and related persons).

The Receiver notes that the proposed QSF will satisfy the requirements of 26 C.F.R. § 1.468B-1(c) because the QSF will: (1) be established pursuant to this Court's order; (2) be established to resolve or satisfy one or more contested or uncontested claims of liability against the Receivership Estate, and (3) constitute a trust under Oregon law.[23]

---

[23] "Oregon adopted the Uniform Trust Code in 2005, and it provides a nonexclusive list of ways to create an express trust." *Hope Presbyterian Church of Rogue River v. Presbyterian Church (U.S.A.)*, 291 P.3d 711, 722 (Or. 2012) (citing O.R.S. § 130.155(1)). *See also* Valerie J. Vollmar, *The Oregon Uniform Trust Code and Comments*, 42 WILLAMETTE L. REV. 187, 246 (2006). Under O.R.S. § 130.155(1), which sets forth the requirements for the creation of a valid trust under Oregon law, the following are required: (1) the settlor has the capacity to create a trust; (2) the settlor indicates an intention to create the trust; (3) the trust has a definite beneficiary or meets the requirements for a noncharitable trust without an ascertainable beneficiary; (4) the trustee must

Page 14      RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

### D. Administrator and Trustee of the Qualified Settlement Fund

26 U.S.C. § 468B and the QSF Regulations require that the QSF have an Administrator ("QSF Administrator") and a Trustee ("QSF Trustee"). The QSF Regulations also provide that the same person or entity may serve as both the QSF Administrator and QSF Trustee.[24] As such, and as further explained in Attachment 1, the QSF Trust, the Court-appointed Receiver, Mr. Greenspan, will serve as both the QSF Administrator and QSF Trustee.[25]

### E. Qualified Settlement Fund tax compliance

The QSF Administrator will obtain an employer identification number for the QSF and prepare the QSF's Form 1120-SF, U.S. Income Tax Return for Settlement Funds (under 26 U.S.C. § 468B) ("QSF's Income Tax Return") for each tax year, and timely file the QSF's Income Tax Return for each year the QSF Trust.[26]

The QSF will cease to exist at the earlier of the following events: (1) the QSF no longer satisfies the requirements under 26 C.F.R. § 1.468B-1 (*see supra*, Section II(B), setting forth means of satisfaction); (2) when the QSF no longer has any assets, and will no longer receive any more transfers of assets; or (3) a final order of this Court terminates the QSF.[27]

## III. MEANS TO EFFECT DISTRIBUTIONS

### A. Distributions from Qualified Settlement Fund

Assets transferred to the QSF will be held by the QSF pending distribution to holders of

---

have duties to perform; and (5) the same person cannot be the sole trustee and the sole beneficiary. Here, the settlor is the Receivership Estate, as established by the Final Receivership Order, with the Receiver acting pursuant to that order and further order by the Court on this Motion.

[24] *See* 26 C.F.R. § 1.468B-2(k)(3) ("[t]he 'administrator' … may include a trustee if the qualified settlement fund is a trust").

[25] If, for some reason in the future, two different parties or entities serve as the QSF Trustee and QSF Administrator, the QSF Trust contains provisions addressing such a circumstance.

[26] 26 C.F.R. § 1.468B-2(k)(3).

[27] 26 C.F.R. § 1.468B-2(k)(2)(ii).

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Allowed Claims. Assets will be held in the QSF pending this Court's consideration of the distribution plan or other further order of the Court authorizing distributions to the holders of Allowed Claims and the payment of the costs of administration of the QSF and the Receivership, including the fees and expenses of the Receiver and his Professionals, as approved by the Court.

**B.    The Receivership Estate retains Third Party Claims, Avoidance Actions, and claims for Disgorgement of Ill-Gotten Gains.**

Nothing in this Motion, the QSF, or any document, instrument, release, or other agreement entered into in connection with this Motion and the establishment of the QSF and the transfer of assets to the QSF, obviates, or limits the Receivership Estate's rights to commence and pursue, as appropriate, any and all Third Party Claims, Avoidance Actions, or claims for Disgorgement of Ill-Gotten Gains, whether arising before or after the commencement of this case, and the rights to commence, prosecute, or settle such claims shall continue with the Receiver.[28] No person or entity may rely on the absence of a specific reference in the distribution plan, or the QSF to any Third Party Claim, Avoidance Action, or claim for Disgorgement of Ill-Gotten Gains against them as any indication that the Receiver will not pursue any and all such actions against them. The Receiver expressly reserves all rights to prosecute any and all such actions possessed by any Receivership Entity regardless of whether they transferred to the QSF, except as otherwise expressly provided in the distribution plan or other order of the Court. Unless a Third Party Claim, Avoidance Action, or claim for Disgorgement of Ill-Gotten Gains belonging to the Receivership Estate is expressly waived, relinquished, exculpated, released, compromised, or settled in the distribution plan or a final order of the Court, the Receiver expressly reserves all such actions for later adjudication. Therefore, the Receiver emphasizes that no preclusion doctrine, including without limitation the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial,

---

[28] *See, e.g.*, Final Receivership Order, ¶¶ 28-29 (authorizing such claims).

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

equitable, or otherwise), or laches, will apply to Third Party Claims, Avoidance Actions, or claims for Disgorgement of Ill-Gotten Gains upon, after, or as a consequence stemming from the approval of this Motion, the distribution plan, or the QSF.

Following entry of a Final Order approving this Motion, the Receiver may continue any existing litigation and may, subject to the provisions of the Final Order, commence any Third Party Claims, Avoidance Actions, or claims for Disgorgement of Ill-Gotten Gains or other proceedings against persons or entities to realize upon any such claims and causes of action.[29]  A holder of an Allowed Claim's receipt of payment on an Allowed Claim does not prohibit the Receiver from bringing a Third Party Claim, Avoidance Action, or claim for Disgorgement of Ill-Gotten Gains against that holder of an Allowed Claim.

## IV.    RETENTION OF JURISDICTION

The Court shall have and retain exclusive jurisdiction of matters arising out of, and related to the QSF and, in particular, the Court shall retain continuing jurisdiction over the QSF, pursuant to section 1.468B-1(c), Income Tax Regs., and over the QSF Trustee, the QSF Administrator, and his Professionals.

## CONCLUSION

For the reasons set forth above, the Receiver respectfully requests that this Court grant its Motion. In particular, this Court should:

(1)    Order that the QSF, substantially in the form set forth in Exhibit 1, be established, including appointing Mr. Greenspan as the trustee and administrator of the QSF;

(2)    Order that upon approval of this Motion, the cash assets held by the Receivership Estate and certain Aequitas entities to be selected by the Receiver are the property of the QSF

---

[29] The Receiver's pursuit of such causes of action remains subject to the Court's ultimate control. *See, e.g.*, Final Receivership Order, ¶¶ 28-29.

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

without further action (the Receiver, trustee, and administrator are authorized but not required to take other steps to confirm such ownership change, including retitling such assets to reflect the ownership of the QSF);

(3)    Approve the use of the QSF to satisfy claims against the Receivership Estate to pay the costs of administration of the QSF and the Receivership, including the fees and costs of the Receiver and his Professionals as approved by the Court;

(4)    Take and retain continuing jurisdiction over the QSF pursuant to Income Tax Regulations, 26 C.F.R. § 1.468B-1(c), and, relatedly, Mr. Greenspan in his capacity as the QSF Trustee and QSF Administrator;

(5)    Order that all provisions of the Order Appointing Receiver [Dkt. 156] shall govern the rights, duties, and powers of all persons, governmental entities, and courts in relation to the QSF, the assets of the Receivership Estate transferred into the QSF, and all actions taken in relation to the QSF, including without limitation in relation to the Receiver serving as trustee and administrator of the QSF and any persons or professionals relied upon by the Receiver in those additional capacities; and

(6)    Order that all holders of Allowed Claims must submit an Employee's Withholding Allowance Certificate or a Request for Taxpayer Identification Number and Certification, as appropriate upon request by the Receiver, and that any associated distribution may be withheld if the holder of the Allowed Claim failed to comply with the Receiver's request (and this Court's Order) to provide such tax or other information needed by the Receiver to effectuate the distribution plan.

\ \ \

\ \ \

\ \ \

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Doing so is in the best interests of the Receivership Estate and, relatedly, provides various tax benefits to the Receivership Estate, while also mitigating the Receivership Estate's tax liabilities for the benefit of holders of Allowed Claims.

Dated this 23rd day of December, 2019.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.

By:    /s/ Alex Poust
Troy Greenfield, OSB #892534
Email: tgreenfield@schwabe.com
Alex I. Poust, OSB #925155
Email: apoust@schwabe.com
Lawrence R. Ream (Admitted *Pro Hac Vice*)
Email: lream@schwabe.com
Telephone: 503-222-9981
Facsimile: 503-796-2900

Ivan B. Knauer (Admitted *Pro Hac Vice*)
Email: iknauer@swlaw.com
SNELL & WILMER LLP
1001 Pennsylvania Ave. NW, Suite 300
Washington, D.C. 20004
Telephone: 202.802.9770

*Attorneys for Receiver for Defendants Aequitas Management, LLC, Aequitas Holdings, LLC, Aequitas Commercial Finance, LLC, Aequitas Capital Management, Inc., and Aequit0as Investment Management, LLC*

RECEIVER'S MOTION FOR ORDER TO AUTHORIZE, APPROVE, AND TAKE CONTINUING JURISDICTION OVER A QUALIFIED SETTLEMENT FUND, AND FOR RELATED RELIEF

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

# AEQUITAS
# QUALIFIED SETTLEMENT FUND
# IRREVOCABLE TRUST AGREEMENT

## ARTICLE 1

### DEFINITIONS

Unless the context otherwise requires, the following terms have the following meanings when used in their capitalized forms as set forth in this Trust. Such meanings are equally applicable to both the singular and plural forms of the terms.

1.1    **Aequitas Entity.**

Any one or more of the Aequitas Entities as the context may require.

1.2    **Aequitas Entities.**

The following entities (or their predecessors in interest) are part of, and together comprise, the Receivership Estate:

Aequitas Management, LLC, Aequitas Holdings, LLC, Aequitas Commercial Finance, LLC, Aequitas Capital Management, Inc., and Aequitas Investment Management, LLC, and their subsidiaries and/or majority owned affiliates as follows:

AAM Fund Investment, LLC; ACC C Plus Holdings, LLC; ACC F Plus Holdings, LLC; ACC Funding Series Trust 2015-5; ACC Funding Trust 2014-1; ACC Funding Trust 2014-2; ACC Holdings 2, LLC; ACC Holdings 5, LLC; ACC Holdings 1, LLC; Aequitas Asset Management Oregon, LLC; Aequitas Capital Opportunities Fund, LP; Aequitas Capital Opportunities GP, LLC; Aequitas Corporate Lending, LLC; Aequitas EIF Debt Fund, LLC; Aequitas Enhanced Income Fund, LLC; Aequitas Enterprise Services, LLC; Aequitas ETC Founders Fund, LLC; Aequitas Hybrid Fund, LLC; Aequitas Income Opportunity Fund, LLC; Aequitas Income Opportunity Fund II, LLC; Aequitas Income Protection Fund, LLC; Aequitas International Holdings, LLC; Aequitas Partner Fund, LLC; Aequitas Peer-to-Peer Funding, LLC; Aequitas Private Client Fund, LLC; Aequitas Senior Housing, LLC; Aequitas Senior Housing Operations, LLC; Aequitas Wealth Management Partner Fund, LLC; Aequitas Wealth Management, LLC; Aequitas WRFF I, LLC; APF Holdings, LLC; Aspen Grove Equity Solutions, LLC; Campus Student Funding, LLC; CarePayment Holdings, LLC; CarePayment, LLC; CP Funding I Holdings, LLC; Executive Citation, LLC; Executive Falcon, LLC; Hickory Growth Partners, LLC; ML Financial Holdings, LLC; Motolease Financial LLC; The Hill Land, LLC; and Unigo Student Funding, LLC.

**EXHIBIT 1**
**Page 1 of 23**

1.3    **Administrator.**

The Administrator of this QSF pursuant to Treasury Regulation Section 1.468B-2(k)(3).

1.4    **Allowed Claim.**

A Claim or a portion thereof that the Court approves under a final order or the Court Approved Distribution Plan that establishes the amount and classification of such Claim for distribution purposes under the approved distribution plan; whether based on a timely filed Proof of Claim, a Notice of Receiver's Initial Determination, or an agreement entered into with the Receiver and approved by the Court, unless such Claim has been paid in full, withdrawn, or otherwise satisfied in full.

1.5    **Attachment 1.**

Copy of the Court Order Approving the establishment of this Trust.

1.6    **Attachment 2.**

Schedule of Beneficiaries of this Trust (as determined after approval of the distribution plan).

1.7    **Attachment 3.**

Classification of Potential Allowed Claims.

1.8    **Beneficiaries.**

The Beneficiaries of this Trust are the holders of Allowed Claims identified in Attachment 2, or as subsequently approved by an order of the Court.

1.9    **Code.**

Internal Revenue Code of 1986, as amended.

1.10    **Consultant.**

Any professional, consultant, or other person or entity hired by the Trustee or Administrator of the QSF or the Receiver, including, but not limited to, investment advisors, accountants, agents, managers, attorneys, actuaries, auditors, or insurers.

1.11    **Corpus.**

Refers to the Corpus of the Trust as defined in Article 4.

**EXHIBIT 1**
**Page 2 of 23**

1.12  **Court.**

The United States District Court for the District of Oregon, Portland Division, presiding over Case No. 3:16-cv-00438-JR, titled *Securities and Exchange Commission v. Aequitas Management, LLC, et al*.

1.13  **Court Approved Distribution Plan.**

Any order by the Court that approves one or more Allowed Claims, authorizes the creation of and transfer of assets to this Trust and/or provides for how the holders of Allowed Claims are to be paid.

1.14  **Court Order.**

The Order from the Court approving the Receiver's Motion to Order, Approve, and take continuing jurisdiction over a qualified settlement fund (*See,* SEC Enforcement Action, Docket #_____).

1.15  **Final Order Appointing Receiver.**

The Order Appointing Receiver entered on April 14, 2016 (*See,* SEC Enforcement Action, Docket #156).

1.16  **IRS.**

The Internal Revenue Service.

1.17  **Mr. Greenspan.**

Ronald F. Greenspan, the Court appointed Receiver in the SEC Enforcement Action.

1.18  **Protected Health Information ("PHI").**

Health data created, received, stored, or transferred as defined by the Health Insurance Portability and Accountability Act ("HIPAA"), and which may be shared by the Receiver and the Trustee as may be necessary to fulfill the intent of this Trust.

1.19  **Qualified Settlement Fund ("QSF").**

A fund, established pursuant to Treasury Regulation Section 1.468B-1(c).

1.20  **Receiver.**

Mr. Greenspan, the Court-appointed federal equity receiver in the SEC Enforcement Action, or any Court-appointed successor to Mr. Greenspan.

**EXHIBIT 1**
**Page 3 of 23**

1.21  **Receivership Estate.**

The Receivership Estate is comprised of the Aequitas Entities administered by the Receiver and the aggregate of all assets, claims, rights, and powers created by the appointment of the Receiver for the Aequitas Entities.

1.22  **SEC.**

The Securities and Exchange Commission, plaintiff in the SEC Enforcement Action.

1.23  **SEC Enforcement Action.**

The action commenced by the SEC in the United States District Court for the District of Oregon, Portland Division, Case No. 3:16-cv-00438-JR, titled *Securities and Exchange Commission v. Aequitas Management, LLC, et al.*

1.24  **SEC Individual Defendants**

The non-entity defendants in the SEC Enforcement Action—specifically: Robert J. Jesenik, Brian A. Oliver, and N. Scott Gillis.

1.25  **Section 468B.**

Section 468B of the Code.

1.26  **Settlor.**

The Settlor of this Trust is the Receiver who transferred cash and other property of the Receivership Estate to this Trust.

1.27  **Transferor.**

Pursuant to Treasury Regulation Section 1.468B-1(d)(1) both the Receiver and the Receivership Estate and specifically the Aequitas Entities shall be "Transferors" for the purposes of Section 468B and this Trust.

1.28  **Trust or Trust Agreement or Agreement.**

The Aequitas Qualified Settlement Fund Irrevocable Trust.

1.29  **Trustee.**

The Trustee of this QSF pursuant to Treasury Regulation Section 1.468B-2(k)(3).

**EXHIBIT 1**
**Page 4 of 23**

# ARTICLE 2

## NAME AND PURPOSE OF THE TRUST

2.1     **Trust Name.**

The name of this Trust is the "Aequitas Qualified Settlement Fund Irrevocable Trust".

2.2     **Identification of Trust Beneficiaries.**

The Beneficiaries of this Trust are the holders of Allowed Claims identified in Attachment 2, or as subsequently approved by an order of the Court.

2.3     **Identification of Trust Settlor.**

The Settlor of this Trust is the Receiver on behalf of the Receivership Estate, pursuant to the Court Order.

2.4     **Trust Purpose and Intent.**

This Trust is being established pursuant to the Court Order and Section 468B for the benefit of the Beneficiaries and to resolve or satisfy the Claims determined to be Allowed Claims. This Trust has been created for certain tax purposes and is part of the Receivership established by the Court in the Final Order Appointing Receiver.

It is the intent of the Trustee, Administrator, the Court, the Transferor, the Beneficiaries, and this Agreement that all steps shall be taken by the Trustee, the Administrator, and the Transferor to ensure that this will qualify as, and remain, a QSF within the meaning of Section 468B and Treasury Regulations Sections 1.468B-1 *et seq*. The QSF Trust is subject to the continuing jurisdiction of the Court and the purpose of this QSF Trust includes, but is not necessarily limited to, (i) receiving, holding, and investing settlement funds received from the Transferor and Receiver and (ii) distributing amounts in accordance with the Court Approved Distribution Plan for those who qualify for such distributions out of the Trust.

It is further intended that all transfers to the Trust will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Code, and Treasury Regulation Section 1.461-1(a)(2). As such, the Transferor shall not be taxed on the income of the Trust. The Trust shall be taxed on its modified gross income, excluding the sums, or cash equivalents of things, transferred to it. In computing the Trust's modified gross income, deductions shall be allowed for, *inter alia*, administrative costs and other incidental deductible expenses incurred in connection with the operation of the Trust, including, without limitation, state and local taxes, and legal, accounting, and actuarial fees relating to the operation of the Trust. All such computations of the Trust's modified gross income, as well as any exclusions or deductions thereto, shall be compliant and consistent with Treasury Regulation Section 1.468B-2(b)(1)-(4).

**EXHIBIT 1**
**Page 5 of 23**

2.5    **Relation-Back Election.**

If necessary, the Trustee, Administrator, and Transferor shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the Trust as coming into existence as a settlement fund as of the earliest possible date.

# ARTICLE 3

## AUTHORITY OF THE TRUST

The Court Order, attached to this Trust as <u>Attachment 1</u>, approved the immediate establishment of a QSF pursuant to Section 468B and Treasury Regulations Sections 1.468B-1 *et seq.*, retained continuing jurisdiction over QSF, the Trustee, and Administrator, pursuant to Treasury Regulation Section 1.468B-1(c)(1), funded the QSF with certain cash and other assets, and ordered that the QSF shall be administered and operated pursuant to this Trust Agreement.

# ARTICLE 4

## CORPUS OF THE TRUST

The Corpus of the Trust shall include:  (i) All sums, rights, interests, assets, claims and similar things of every kind, nature and description transferred to the Trust pursuant to and contemporaneously with the Court Order; (ii) All sums transferred to the Trust pursuant to the Court Approved Distribution Plan with the Transferor; (iii) All sums, rights, interests, assets, claims, and similar things of every kind, nature, and description granted, transferred, or assigned to the Trust pursuant to further orders of the Court, or otherwise belonging to the Trust; and (iv) All income derived from any of the above assets of the Trust.

# ARTICLE 5

## IRREVOCABILITY OF TRUST

This Trust is irrevocable. The Transferor does not reserve any right to, and shall not, alter, amend, revoke, or terminate this Trust, in whole or in part, at any time. The Transferor shall have no power or authority to direct the Trustee to return any of the Corpus to the Transferor. Further, the Transferor shall have no rights or obligations with respect to the Trust. This Trust and its Corpus, however, will remain subject to the Court's jurisdiction at all times.

# ARTICLE 6

## DISTRIBUTIONS

The Trustee shall distribute the Corpus to the Beneficiaries in accordance with the Court Approved Distribution Plan. The timing of the distributions shall be determined

**EXHIBIT 1**
**Page 6 of 23**

solely by the Trustee, as approved by the Court. The distributions may be made by lump-sum cash payment or structured settlement payments. The Trustee may require each Beneficiary to execute a release acknowledging and agreeing they have received full satisfaction of their claim(s) to receive their final distribution from the QSF. Any holder of an Allowed Claim who has not negotiated (cashed) its distribution check on or before six (6) months following the date of distribution, at the discretion of the Trustee, shall be deemed disallowed and forfeited as to such distribution and all further distributions on account of such Allowed Claim. In such cases, (i) any cash for distribution on account of such Claims for undeliverable or unclaimed distributions shall become the property of the Qualified Settlement Fund free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and (ii) such funds shall be available for distribution to other holders of Allowed Claims. Except and unless ordered by the Court, the Trustee is not required to attempt to locate any holder of an Allowed Claim.

# ARTICLE 7

## TERMINATION

### 7.1    **Timing.**

The Trust may be terminated upon the earliest of: (i) the QSF no longer satisfies the requirements under Treasury Regulation Section 1.468B-1; (ii) when the QSF no longer has any assets, and will no longer receive any more transfers of assets; or (iii) a final order of this Court terminates the QSF. Whenever the Trustee determines that the Trust may be properly terminated pursuant to this Article, the Trustee may submit a petition for termination of the Trust to the Court. After reviewing the petition, the Court may terminate the Trust or may order the Trust to undertake such further actions as the Court deems necessary and appropriate.

### 7.2    **Distribution Upon Termination.**

Upon termination of the Trust, the Trustee shall liquidate any remaining assets of the Trust and distribute any such liquidated assets as directed by, and under the supervision of, the Court and the Court Approved Distribution Plan.

# ARTICLE 8

## DESIGNATION OF TRUSTEE AND ADMINISTRATOR

### 8.1    **Appointment of Trustee and Administrator.**

Mr. Greenspan shall serve as the Trustee of the Trust. The Trustee is independent of the SEC Individual Defendants, the Aequitas Entities as Transferors, and independent of each Beneficiary. Mr. Greenspan shall also act as Administrator of the Trust.

While it is intended that Mr. Greenspan act both as Trustee and Administrator for the duration of this Trust to avoid the duplication of expenses, this Agreement has been drafted in contemplation of different parties potentially serving in such roles, in the event

**EXHIBIT 1**
**Page 7 of 23**

this becomes necessary. If different persons are serving as Trustee and Administrator, they will be independent of each other. In any event, the Trustee shall have the authority and responsibilities listed in <u>Article 9</u> and the Administrator shall have the authority and responsibilities listed in <u>Article 13</u>.

8.2    **Consent to Act.**

In executing this Agreement, Mr. Greenspan agrees and consents to act as Trustee and Administrator of this Trust.

# **ARTICLE 9**

## **EXPRESS POWERS OF TRUSTEE**

The Trustee shall be vested with all powers necessary to effectuate the purpose of this Trust. However, any grant of power set forth in this Trust does not itself require or permit the exercise of that power, given that Trustee powers are subject to the Trustee's fiduciary duties. Furthermore, the Trust and Trustee remain under the authority of the Court and subject to such authority. In all events in which the Receiver is acting as Trustee, the Trustee's powers shall include those powers granted to the Receiver in the Final Order Appointing Receiver and any subsequent orders of the Court. Otherwise, the Trustee's powers shall include, but not be limited to, the following:

9.1    **Payment of Expenses.**

Subject to the terms, conditions and requirements of the Final Order Appointing Receiver, the Trustee is empowered to incur on behalf of the Trust and the Receivership Estate, and pay from the assets of the Trust, all reasonable and necessary expenses incurred by the Trustee in maintaining and administering the Trust and the Receivership Estate including, without limitation, the fees and costs associated with hiring and employing Consultants, as well as other expenses incurred to maintain and administer the Trust and the Receivership Estate.

9.2    **Retention of Consultants and Professionals.**

Subject to the terms, conditions and requirements of the Final Order Appointing Receiver, the Trustee is empowered to retain any Consultant to: (i) Effectuate the purposes of the Trust, or (ii) Maintain and administer the Trust. Consultants specifically includes Professionals previously retained by the Receiver, and, except as may be required by the Court, the Trustee adopts and ratifies the Receiver's previously employed Professionals. The selection of such further and additional Consultants and Professionals shall be at the discretion of the Trustee, subject to the terms, conditions and requirements of the Final Order Appointing Receiver. The Trustee is empowered to pay Consultants from the assets of the Trust reasonable fees for their services.

**EXHIBIT 1**
**Page 8 of 23**

9.3     **Execution of Documents.**

The Trustee is empowered to make, sign, execute, acknowledge, and deliver any documents, with or without seal, and whether or not under oath, which may be necessary or appropriate to effectuate the purposes of the Trust and administer the Trust.

9.4     **Extension of Obligations.**

The Trustee is empowered to renew or extend the time for performance of any obligation owed to the Trust for such periods of time and on such terms as the Trustee deems advisable.

9.5     **Litigation, Other Proceedings, and the Law.**

Subject to the terms, conditions and requirements of the Final Order Appointing Receiver, the Trustee is empowered to institute, conduct, defend, settle, or compromise any litigation or other proceeding in any court of law or equity, or any administrative or regulatory forum in the name of the Trust, if the Trustee deems it advisable, in the Trustee's sole discretion. The Trustee is empowered to comply with all requirements imposed by applicable law, rule, or regulation.

9.6     **Discretion.**

The Trustee is empowered to do any and all things the Trustee deems necessary or appropriate to effectuate the purposes of the Trust or to maintain and administer the Trust.

9.7     **Grant of Powers Limited.**

The Trustee may not dispose of the Corpus for less than adequate and full consideration in money or money's worth unless expressly authorized by the Court.

9.8     **Modifications of the Trust.**

The Trustee is empowered to petition the Court for modification of this Agreement (including the Attachments) if the Trustee determines that such modifications are necessary to conform to legal, tax, or administrative requirements, or to avoid unanticipated tax consequences or liabilities inconsistent with the Court Approved Distribution Plan.

9.9     **Release of Claims.**

Pursuant to and as required by Treasury Regulation Section 1.468B-1(c)(2), (f)(1), the Trustee is empowered to release the Transferor from any and all Allowed Claims the Beneficiaries now have or may have, presently known or unknown, against the Transferor arising out of the potential allowable claims identified in Attachment 3.

Page 9 of 23

**EXHIBIT 1**
**Page 9 of 23**

# ARTICLE 10

## IMMUNITY AND INDEMNIFICATION OF TRUSTEE

10.1    **Generally.**

The Trustee acts as Trustee only and not personally. All persons shall therefore look solely to the Trust for compensation with respect to any contract, obligation, or liability made or incurred by the Trustee in good faith. In the event the Trustee is also the Receiver, the Trustee's potential liability and duties shall be the same as provided in the Final Order Appointing Receiver, otherwise the Trustee shall be liable only for the Trustee's own acts or omissions resulting from Trustee's own gross negligence or willful misconduct. The Trustee may purchase and maintain insurance coverage for the Trustee against any such liability for gross negligence as an expense of the Trustee personally, and not as an expense of the Trust. Limitation of the Trustee's liability, as well as the duties to defend, indemnify and hold harmless discussed in Paragraph 10.2, shall survive the Trustee's resignation or removal.

10.2    **Duty to Defend, Indemnify, and Hold Harmless.**

The Trust shall defend, indemnify, and hold the Trustee harmless from and against any and all uninsured claims, liabilities, costs, damages or expenses arising from any contract, obligation, or liability made or incurred by the Trustee in good faith. Nothing in this Article shall be construed or interpreted to limit in any way the protections and immunities, if any, afforded to the Trustee pursuant to federal or state statutes or common law. Notwithstanding the foregoing, this indemnification, obligation of defense, and covenant to hold harmless shall not apply to any liability: (i) arising from a criminal proceeding where the Trustee had reasonable cause to believe that the conduct in question was unlawful; or (ii) where the Trustee is held to have acted with gross negligence.

# ARTICLE 11

## TRUSTEE COMPENSATION

Subject to the terms, conditions and requirements of the Final Order Appointing Receiver, the Trustee shall be entitled to receive reasonable compensation from the monetary assets of the Trust, as finally approved by the Court.

# ARTICLE 12

## SUCCESSOR TRUSTEE

12.1    **Resignation.**

The Trustee may resign at any time. The Trustee shall deliver written notice of Trustee's resignation to the Court and at the same time provide the Administrator with a copy of the written notice. The resignation shall take effect upon the date specified in the

EXHIBIT 1
Page 10 of 23

notice of resignation, or 30 days after delivery of the written notice of resignation, whichever is later. If no date is specified, the resignation shall take effect 30 days after delivery of the written notice. Notwithstanding the foregoing, the Court shall have the authority to specify a different effective date, which shall be controlling.

Prior to the effective date of the Trustee's resignation, the Trustee shall, within 15 days of delivering written notice of resignation to the Court, prepare and deliver to the Court, with a copy to the Administrator, a list of competent, qualified, and appropriately experienced persons or entities to serve as Successor Trustee. The Transferor and the Beneficiaries shall be entitled to request and receive copies of such list. Upon receipt of such requests, the Trustee shall provide the list electronically or by other means at Trustee's discretion within 5 days.

### 12.2    **Removal.**

The Court may remove the Trustee on its own motion for any reason the Court deems appropriate or proper. The removal shall take effect upon the date the Court specifies. Limitation of the Trustee's liability, as well as the duties to defend, indemnify and hold harmless discussed in Paragraph 10.2, shall survive the Trustee's removal.

### 12.3    **Appointment of Successor Trustee.**

The Court shall fill any vacancy in the office of Trustee. Where a Trustee has resigned pursuant to Section 12.1, the Court may, but is not required to, appoint a successor Trustee from the list provided by the resigning Trustee.

### 12.4    **Acceptance of Appointment of Successor Trustee.**

Any successor Trustee's acceptance of appointment shall be in writing and filed with the Court. The successor Trustee shall at the same time also provide the Administrator and the prior Trustee with a copy of the written acceptance. The acceptance shall be effective upon receipt by the Court and thereafter the successor Trustee shall be considered a Trustee of the Trust without the necessity of any conveyance or instrument. The prior Trustee shall, by the earliest date possible, deliver to the successor Trustee all of the Trust's assets that were in possession of the prior Trustee, along with a complete record and inventory of all such assets, to the best of his knowledge. Each successor Trustee shall have all of the rights, powers, duties, authority, and privileges as if initially named as Trustee hereunder. Each successor Trustee shall be exempt from any liability related to the acts or omissions of prior Trustees.

### 12.5    **Preservation of Record of Changes in Trustee.**

A copy of each resignation, removal, appointment, and acceptance of appointment document shall be attached to and become an executed counterpart of this Agreement.

**EXHIBIT 1**
**Page 11 of 23**

# ARTICLE 13

## POWERS, DUTIES, IMMUNITY, AND REPLACEMENT OF THE ADMINISTRATOR

### 13.1    Express Powers of the Administrator.

The Administrator shall only have the powers to undertake and pursue the functions described in or required by this Article. The Administrator shall have no other powers.

### 13.2    Employer Identification Number.

Upon establishment of the Trust, the Administrator shall apply for an employer identification number for the Trust pursuant to IRS Form SS-4, and in accordance with Treasury Regulation Section 1.468B-2(k)(4).

### 13.3    Filing Relation-Back Election.

If necessary, the Administrator shall file a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the Trust as coming into existence as a settlement fund as of the earliest possible date.

### 13.4    Tax Preparation, Reporting, and Withholding Requirements.

On behalf of the Trust, the Administrator shall file all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulation Section 1.468B-2(k). The Administrator shall cause to be filed all required federal, state, and local information returns and ensure QSF compliance with withholding requirements in accordance with the provisions of Treasury Regulation Section 1.468B-2(l). The Administrator may retain one or more Consultants to consult with and advise the Administrator (and the Trustee) with respect to the preparation of any and all appropriate income tax returns, information returns, or compliance with withholding requirements for distributions. The Transferor (or some other person on behalf of the Transferor) shall supply to the Administrator and the IRS the statement described in Treasury Regulation Section 1.468B-3(e)(2), no later than February 15 of the year following each calendar year in which the Transferor (or some other person on behalf of the transferor) makes a transfer to the Trust.

### 13.5    General Powers of the Administrator.

The Administrator shall be empowered to take all such actions as the Administrator deems necessary to ensure the Trust is treated as a QSF under Section 468B and Treasury Regulation Sections 1.468B-1 *et seq*. Accordingly, if appropriate, the Administrator shall elect to apply settlement fund rules by filing a "Section 1.468B-5(b)(2) Election."

EXHIBIT 1
Page 12 of 23

13.6    **Immunity and Indemnification.**

The Administrator acts as Administrator only and not personally. All persons shall therefore look solely to the Trust for compensation with respect to any contract, obligation, or liability made or incurred by the Administrator in good faith. In the event the Administrator is also the Receiver, the Administrator's potential liability and duties shall be the same as provided in the Final Order Appointing Receiver, otherwise the Administrator shall be liable only for the Administrator's own acts or omissions resulting from Administrator's own gross negligence or willful misconduct. The Administrator may purchase and maintain insurance coverage for the Administrator against any such liability for gross negligence as an expense of the Administrator personally, and not as an expense of the Trust.

13.7    **Duty to Defend, Indemnify, and Hold Harmless.**

The Trust shall defend, indemnify, and hold the Administrator harmless from and against any and all uninsured claims, liabilities, costs, damages, or expenses arising from any contract, obligation, or liability made or incurred by the Administrator in good faith. Nothing in this Article shall be construed or interpreted to limit in any way the protections and immunities, if any, afforded to the Administrator under federal, state, or common law. Notwithstanding the foregoing, this indemnification, obligation of defense, and covenant to hold harmless shall not apply to any liability: (i) arising from a criminal proceeding where the Administrator had reasonable cause to believe that the conduct in question was unlawful; or (ii) where the Administrator is held to have acted with gross negligence.

13.8    **Compensation.**

Subject to the terms, conditions and requirements of the Final Order Appointing Receiver, in the event the Administrator and Trustee are different persons, the Trustee, with Court approval, shall determine the compensation paid to the Administrator, which shall be paid from the assets of the Trust. This amount shall be recorded within the records of the Trust. If the same person is serving as Trustee and Administrator, their compensation will be set pursuant to Article 11.

13.9    **Resignation.**

The Administrator may resign at any time. The Administrator shall deliver written notice of Administrator's resignation to the Court and at the same time provide the Trustee with a copy of the written notice. The resignation shall take effect upon the date specified in the notice of resignation, or 30 days after delivery of the written notice of resignation, whichever is later. If no date is specified, the resignation shall take effect 30 days after delivery of the written notice. Notwithstanding the foregoing, the Court shall have the authority to specify a different effective date, which shall be controlling.

Prior to the effective date of the Administrator's resignation, the Administrator shall, within 15 days of delivering written notice of resignation to the Court, prepare and deliver to the Court, with a copy to the Trustee, a list of competent, qualified and appropriately experienced persons or entities to serve as the Administrator's successor. The

**EXHIBIT 1**
**Page 13 of 23**

Transferor and the Beneficiaries shall be entitled to request and receive copies of such list. Upon receipt of such requests, the Administrator shall provide the list electronically or by other means at the Administrator's discretion within 5 days.

13.10  **Removal.**

The Court may remove the Administrator:  (i) on its own motion for any reason the Court deems appropriate or proper, or (ii) upon written request of the Trustee if the Court deems removal is appropriate or proper. Removal shall take effect upon the date the Court specifies.

13.11  **Appointment of Successor Administrator.**

The Court shall fill the Administrator position if it is vacant. Where an Administrator has resigned pursuant to Section 13.9, the Court may, but is not required to, appoint a successor from the list provided by the resigning Administrator.

13.12  **Acceptance of Appointment of Successor Administrator.**

Any successor Administrator's acceptance of appointment shall be in writing and filed with the Court. The successor Administrator shall at the same time also provide the Trustee and the prior Administrator with a copy of the written acceptance. The acceptance shall be effective upon receipt by the Court. The prior Administrator shall, by the earliest date possible, deliver to the successor Administrator all of the Trust's assets which were in possession of the prior Administrator, along with a complete record and inventory of all such assets. Each successor Administrator shall be exempt from any liability related to the acts or omissions of prior Administrators.

13.13  **Preservation of Record of Changes in Administrator.**

A copy of each resignation, removal, appointment, and acceptance of appointment document shall be attached to and become an executed counterpart of this Agreement.

13.14  **Financial Reports.**

On behalf of the Trust, the Administrator shall prepare financial reports as required by the Final Order Appointing Receiver. Copies of the reports shall be provided to the Trustee.

13.15  **Additional Reporting.**

The Administrator shall report to the Court, in writing, with respect to any matter arising from the administration of the Trust that the Administrator deems advisable to bring to the attention of the Court, or upon the request of the Court. Any such report shall also be provided to the Trustee.

**EXHIBIT 1**
**Page 14 of 23**

13.16  **Records.**

Aside from the reporting requirements set forth in this Article, the Administrator shall create and maintain records of the Administrator's activities arising from this Agreement and any orders of the Court as may be necessary. The records shall be created and maintained in a manner that is ordinary and customary for the obligations imposed by any orders of the Court or this Agreement. Copies of the records shall be provided to the Court and the Trustee upon request, subject to any privileges or other protections. Any privileged or otherwise protected material shall be provided under seal to the Court for in camera review. Upon termination of the Trust, all privileged or otherwise protected records shall be returned to the Administrator.

13.17  **Management of the Trust Corpus.**

The Administrator shall be empowered to manage the Corpus as it deems advisable to effectuate the purposes of the Trust. This shall include, but not be limited to, the investment of monetary assets of the Trust and the earnings thereon, if any, so there are adequate resources available to pay for the reasonable and necessary expenses incurred by the Administrator in maintaining and administering the Trust. Unless otherwise ordered by the Court, the monetary assets of the Trust shall be titled in the name of the Trust and invested in:  (i) United States Treasury bills and other United States Government-backed securities (or a mutual fund invested solely in such instruments); (ii) cash equivalent securities including SEC registered money market funds and money market accounts; or (iii) deposit and similar interest bearing or non-interest bearing accounts. High risk or speculative investments are expressly prohibited. The Administrator may periodically obtain counsel from qualified financial planners or economic advisers to ensure that assets of the Trust remain allocated in high quality, low risk investments.

# **ARTICLE 14**

## **INTERESTS IN THE TRUST**

No money or other property payable or distributable under the provisions of this Agreement shall be anticipated, charged or encumbered by any of the beneficiaries hereunder, or be in any manner liable in the possession of the Trustee for debts, contracts, obligations or engagements of such beneficiaries, voluntarily or involuntarily, or for any claims, legal or equitable, against any beneficiary. This shall include, but not be limited to, encumbrances associated with claims of any creditor (in or outside of bankruptcy or other insolvency statutory schemes) under any federal, state, or local laws. To the extent possible, the terms of this Agreement shall be interpreted so as to prevent Beneficiaries from being in constructive receipt, as determined under federal income tax principles, of any amounts held by the QSF prior to the time when the funds allocated to an individual Beneficiary's settlement have been released from the QSF according to its terms.

**EXHIBIT 1**
**Page 15 of 23**

# ARTICLE 15

## SAVINGS PROVISION

Notwithstanding anything herein to the contrary, in the event that any portion of this Trust shall at any time be considered not to be in compliance with Section 468B, as amended, together with any and all Treasury Regulations, and IRS Notices, Rulings, Announcements, and directives thereunder, such offending Section of this Agreement shall be considered null, void and of no effect, without any action by any court, the Trustee, or the Administrator.

# ARTICLE 16

## MISCELLANEOUS

### 16.1    Interpretation.

As used in this Agreement, words in the singular include the plural, and words in the plural include the singular. The use of any gender specific language shall be deemed to include the masculine, feminine, and neuter. The descriptive heading for each paragraph of this Agreement shall not affect the interpretation or the legal efficacy of this Agreement.

### 16.2    Notices.

All notices or deliveries required or permitted by this Agreement shall be in writing and shall be deemed given upon any one or more of the following:  (i) when personally delivered; (ii) when actually received by means of electronic mail to the last known address provided to the Receivership Estate; (iii) when received by express courier delivery; and (iv) when delivered and receipted for by certified mail, postage prepaid, return receipt requested (or in the event of attempted delivery and refusal of acceptance, then on the date of the first attempted delivery).

### 16.3    Choice of Law.

This Agreement shall be administered, governed by, construed, and enforced according to the laws of the State of Oregon, except that all matters of federal tax law and the Trust's compliance with Section 468B and the Treasury Regulations thereunder shall be governed by federal income tax law.

### 16.4    Invalidity and Unenforceability.

If any term, Article, or Section of this Agreement shall be invalid or unenforceable, the remainder of this Agreement shall not be affected thereby, and each remaining term, Article, and Section of this Agreement shall be valid and enforced to the fullest extent permitted by law.

EXHIBIT 1
Page 16 of 23

16.5    **Severability.**

If the fulfillment of any obligation imposed by this Agreement will result in a violation of law, then ipso facto, the obligation to be fulfilled shall be reduced by the least amount necessary to comply with the law.

16.6    **Entirety of Agreement.**

This Agreement supersedes any and all prior or contemporaneous oral discussions and agreements with respect to the subject matter hereof that might add to, vary, or contradict this Agreement. This Agreement, together with the Attachments, the Court Approved Distribution Plan, and the Court Order, contain the sole and entire agreement and understanding with respect to the matters addressed therein.

16.7    **Binding Agreement.**

The persons executing this Agreement, including the Attachments hereby covenant, warrant, and represent that:  (i) each person is duly authorized to execute this Agreement; (ii) this Agreement is binding; and (iii) the execution of this Agreement will not result in any breach or constitute a default under any obligation, undertaking, contract, or agreement to which such persons are a party or by which such persons may be bound.

16.8    **Counterparts.**

This Agreement may be executed in two or more counterparts, with the same effect as if all signatures on such counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.9    **Independent Legal and Tax Counsel.**

The persons executing this Agreement and Attachments have been, or have had the opportunity to be, represented by counsel and advisors of his, her, their, or its own selection in this matter. Further, such persons represent that they have not relied upon any individual, nor have they relied upon the draftsmanship reflected in this Agreement. Such persons represent that they have not acted under duress or compulsion, whether legal, economic, or otherwise. Consequently, they agree that the language in all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning and neither strictly for nor against anyone.

IT IS SPECIFICALLY ACKNOWLEDGED AND UNDERSTOOD THAT THIS TRUST AGREEMENT HAS NOT BEEN SUBMITTED TO, NOR REVIEWED OR APPROVED BY, THE INTERNAL REVENUE SERVICE OR THE TAXING AUTHORITY OF ANY STATE OR TERRITORY OF THE UNITED STATES OF AMERICA.

**EXHIBIT 1**
**Page 17 of 23**

16.10    **Continuing Jurisdiction/Registered Agent.**

As specified in the Court Order and as further set forth in this Agreement, the Court shall retain full jurisdiction over the Trust for purposes of ensuring its compliance with the Court Order, this Agreement, and any future order of the Court. The Trustee shall be a registered agent for the Trust for the purpose of personal service of process.

[Signatures on following page]

**EXHIBIT 1**
**Page 18 of 23**

IN WITNESS WHEREOF, the parties have executed this Trust Agreement on the date indicated below.

**SETTLOR**

_____

_____

RONALD F. GREENSPAN, Receiver for          Date: _____
the Aequitas Entities

**TRUSTEE**

_____

_____

RONALD F. GREENSPAN                        Date: _____

**ADMINISTRATOR**

_____

_____

RONALD F. GREENSPAN                        Date: _____

**EXHIBIT 1**
**Page 19 of 23**

**ATTACHMENT 1**

**AEQUITAS**

**QUALIFIED SETTLEMENT FUND**

**IRREVOCABLE TRUST**

**COURT ORDER APPROVING**

**ESTABLISHMENT OF THIS QSF TRUST**

*SEE ATTACHED*

**EXHIBIT 1**
**Page 20 of 23**

**ATTACHMENT 2**

**AEQUITAS**

**QUALIFIED SETTLEMENT FUND**

**IRREVOCABLE TRUST**

SCHEDULE OF BENEFICIARIES

*SEE ATTACHED*

**EXHIBIT 1**
**Page 21 of 23**

**ATTACHMENT 3**

**AEQUITAS**

**QUALIFIED SETTLEMENT FUND**

**IRREVOCABLE TRUST**

CLASSIFICATION OF POTENTIAL ALLOWED CLAIMS

1.    *Administrative Claims*

      An Allowed Claim based on:  (i) the provision of goods or services for the benefit of the Receivership Estate or at the request of the Receiver beginning on or after March 16, 2016, which remain unpaid; (ii) any taxes arising from or attributable to tax periods beginning on or after March 16, 2016, including those that may be asserted by federal, state, local, or other governmental entities or authorities, which remain unpaid; (iii) an uncashed check issued on or after March 16, 2016, for refund on account of a healthcare account receivable overpayment, student loan account receivable overpayment or other overpayment; or (iv) any current, future or contingent contractual obligations (including indemnification obligations) arising from any contract entered into by or on behalf of the Receivership Estate.

2.    *Professional Claims*

      Professional Claims include those based on professional services provided and fees and costs incurred after March 16, 2016, by the Receiver and his professionals for the benefit of the Receivership Estate. The Receiver will continue to satisfy Professional Claims in the ordinary course and in accord with prior or future court orders, as appropriate to the claim.

3.    *Non-Officer Former Employee Claims*

      Non-Officer Former Employee Claims are claims that accrued on behalf of a Non-Officer Former Employee prior to the Aequitas Enterprise being placed in the Receivership for services provided in accordance with the terms of employment, including for the amount of paid time off that accrued and was unused as of the separation date; amounts owing under the provisions of the Worker Adjustment and Retraining Notification Act ("Warn Act"); and amounts owing pursuant to contract, including, but not limited to, severance pay, retirement pay, expense reimbursement, and relocation or other bonus as of the separation date.

4.    *Claims of Defrauded Investors*

      Defrauded Investor Claims include all of the Allowed Claims of Defrauded Investors including, without limitation a Claim based on an investment transaction in, with, or through an Aequitas Entity (excluding Pass-through Entities), including but not limited

**EXHIBIT 1**
**Page 22 of 23**

to transactions based on or related to: (i) promissory notes or other money loaned to an Aequitas Entity, and (ii) investments (by subscription or otherwise) in an Aequitas Entity (excluding Pass-through Entities). Defrauded Investor Claims exclude any Claim that is otherwise classified herein. If an Investor meets the definition of both a Defrauded Investor and a Pass-through Investor, the Investor's Distribution shall be calculated based on those portions of the Investor's Claim that make the Investor a Defrauded Investor with no increase or decrease in that amount in relation to those portions of the Claim that make the Investor a Pass-through Investor.

**5.      *Non-Administrative Claims of Taxing Authorities and Other Governmental Entities***

Claims of taxing authorities and other governmental entities that are not an Allowed Administrative Claim but are otherwise entitled to priority over Creditor Claims.

**6.      *Creditor Claims***

A Creditor Claim is a Claim against an Aequitas Entity, including but not limited to transactions based on, related to, arising from or in connection with: (i) any contract, lease, or other agreement entered into prior to March 16, 2016, for which payment has not been made in whole or in part or for which payment has or will become due prior to, on or after March 16, 2016 (other than Defrauded Investors); (ii) goods or services provided prior to March 16, 2016; (iii) an uncashed check issued prior to March 16, 2016 for refund on account of a healthcare account receivable overpayment, student loan account receivable overpayment, or any other overpayment; (iv) unpaid wages, compensation, or other employment benefits, that accrued prior to March 16, 2016 that exceed the priority wage claim cap of $12,850; or (v) taxes payable by an Aequitas Entity arising from or attributable to tax periods beginning prior to March 16, 2016, even if due and payable subsequent to March 16, 2016, including those that may be asserted by federal, state, local or other governmental entities or authorities. To the extent that a Claim meets the definition of both a Creditor Claim and some other classification of Claim, each Claim shall be determined and treated based on the portion of the Claim that falls within each classification.

**7.      *Claims of the SEC Individual Defendants***

Any Claim filed by any of the SEC Individual Defendants against the Receivership Estate, or to any assets of the Receivership Estate, or for any interest in any entity now part of the Receivership Estate.

**EXHIBIT 1**
**Page 23 of 23**